*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CF-1448

JAMES M. SCHOOLS, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-7397-11)

(Hon. Stuart Nash, Trial Judge)

(Submitted October 22, 2013                    Decided December 19, 2013)

*Jamison Koehler* was on the brief for appellant.

*Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman, Suzanne Grealy Curt, Ben Schrader*, and *Peter S. Smith*, Assistant United States Attorneys, were on the brief for appellee.

Before THOMPSON, *Associate Judge*, and WAGNER and SCHWELB, *Senior Judges*.

Opinion for the court by *Associate Judge* THOMPSON.

Dissenting opinion by *Senior Judge* WAGNER at page 20.

THOMPSON, *Associate Judge*:   A jury convicted appellant James Schools (aka David Schools) of unlawful possession of a firearm by a felon, possession of an unregistered firearm, and unlawful possession of ammunition (acquitting him of

possession with intent to distribute cocaine while armed, lesser-included cocaine-possession charges, and possession of a firearm during a crime of violence). He seeks reversal of his convictions on the ground that the evidence at trial was not sufficient to show that he had constructive possession of the gun and ammunition — i.e., that "no jury could have reasonably concluded beyond a reasonable doubt that [he] knew about the firearm and ammunition" or that he "had the requisite intent to exercise dominion and control" over them. We are persuaded by his argument and therefore reverse.

## I. The Evidence

The government presented evidence that shortly after 7:00 a.m. on April 21, 2011, Metropolitan Police Department ("MPD") officers executed a search warrant of an apartment located at 1608 17th Place, S.E. The apartment, which was on the first floor of a two-story building, had a front bedroom and a second "back bedroom" that had been converted from a sleeping porch and had a door that led outside. Officer Alvin Cardinal testified that when police arrived at the apartment, they knocked on the door and one officer loudly yelled, "Police, search warrant" at least twice. After waiting 15 to 30 seconds and hearing no response from inside

the apartment, officers used a battering ram to force entry into the apartment. They first encountered a woman and a child near the front of the apartment. Officer Cardinal and Detective Scott Brown, another member of the search team, testified that two other people were stopped just outside the apartment, on the "ledge" of the back-bedroom door that led to the outside. When Officer Cardinal first approached the back bedroom, he found appellant, whom he described as a "large gentleman," standing next to a bed, his back turned away from the door, and his hands positioned "as if he was manipulating or hiding something." Appellant was wearing only a pair of boxers and a tank top. Officer Cardinal twice ordered appellant to "put his hands up." After the second order, appellant dropped a "white object," raised his hands, and turned around. Officer Cardinal handcuffed the appellant and took him into the living room, where officers were detaining "all the other . . . occupants who were in the house[.]"

When officers returned to the back bedroom after taking appellant into the living room, they saw, in the area where appellant had dropped the white object, a white, man's shoe, inside of which were 53 green zip-lock bags containing crack cocaine. Officers also found a digital scale on the windowsill of the room. Detective Erick Alvarado testified that in the right middle drawer of a three-level,

six-drawer dresser, "hidden underneath clothing,"[1] he found a .45-caliber handgun in a plastic bag, five rounds of ammunition, and a shaving-kit-like bag that contained, in a side pouch, a potato chips bag, inside of which were empty, pink ziplock bags. Police were unable to recover any fingerprints from the handgun or the ammunition.[2]

Officer Cardinal identified Government Exhibit 37 as a videotape that a police technician took on the morning of the search, which, the officer explained, was recorded before officers started searching, "just to show where all the evidence" was before anything was moved. As the prosecutor played the video for the jury, Officer Cardinal identified a shot of appellant (whom the video shows to be a heavyset man) and a shot of two other (much smaller) men, who are shown seated in the living room and who Officer Cardinal testified were "in the search warrant."

---

[1] Detective Alvarado, who found the gun, testified that he recalled that there was "clothing on top" of the items, but he could not say "exactly what the piece of clothing was."

[2] As defense counsel emphasized during closing argument, the government also presented "no scientific evidence linking" appellant to the ziplock bags found in the dresser drawer.

MPD Detective Lavinia Quigley, who also participated in the search, testified that as it got underway, she gave appellant men's clothing (a shirt and sweat pants) that she had found on a chair in the back bedroom, and he put the clothes on. She had also looked in the front bedroom for clothes for appellant, but found only female clothing and children's clothing. She also gave appellant shoes that she testified she believed she got from the back bedroom (although, when pressed on cross-examination, she testified that she was "not sure" that she got the shoes from the back bedroom rather than from a clothes closet in the living room).[3] She testified on cross-examination that her recollection was that there were clothes in the living room closet.

MPD Detective George Thomas testified about the use of digital scales and ziplock bags in drug distribution, the distribution-quantity and heat-sealed ziplock packaging of the cocaine found in the apartment, and the "reason[s] that someone might possess a gun in connection with narcotics." He also testified that the color of ziplock bags used can be "representative of [a drug dealer's] brand of packaging." On cross-examination, Detective Thomas testified that a drug dealer's stash might be kept in "someone else's place of abode[.]"

---

[3] The police videotape appears to show a pair of shoes (in addition to the white shoes) on the floor in the back bedroom.

Valene Mason and MPD Officer Christopher Eckert testified for the defense. Mason testified that she lived in the apartment with appellant and the couple's young daughter. Appellant's nephew Jervel Mason ("the nephew") had also been living there since the beginning of April, and both the nephew and a man by the name of Timothy Thomas had stayed in the apartment on the night before the search. "[N]ormally," Mason testified, the nephew slept in the back bedroom, and appellant slept in the living room and kept his clothes in the living room closet and the closet in the front bedroom. Mason further testified that on the night of the search, appellant, whose health was "pretty bad," slept in the back bedroom because he was feeling sick. Mason testified that the clothing inside the dresser in the back bedroom belonged to the nephew.[4] She testified that the shoe (Government Ex. 2) containing cocaine also belonged to the nephew, as did a wallet in the back bedroom that was shown in the police videotape. She testified that a pack of Marlboro cigarettes in the back bedroom also shown in the video belonged to Timothy Thomas. Mason further testified that when police came to

---

[4] Mason also testified that before the police arrived, she had gone into the back bedroom to retrieve her daughter's uniforms so that she could get her daughter dressed in the front bedroom. She testified that there was no way to hang clothes in the closet in the back bedroom, but that the closet contained a laundry bag of clothes (including some men's clothes) that someone had given her and that needed to be washed.

the apartment to execute the search warrant, the nephew and Thomas ran out the door of the back bedroom. Mason identified two young men whom the video shows sitting in the living room as the nephew and Timothy Thomas.

Officer Christopher Eckert testified that he arrested a man name Ronnie Caldwell on June 1, 2011, and recovered 42 green zip lock bags containing crack cocaine.[5] Mason testified that Mr. Caldwell had been regularly visiting the apartment during the week leading up to appellant's arrest, that she was afraid of Caldwell because he had been "involved in . . . shootings" in the neighborhood and because she had seen him engage in physical violence, and that she had seen Caldwell bring a gun into the apartment.

## II.  Applicable Law

The government proceeded against appellant on the theory that he constructively possessed the gun and ammunition. Accordingly, the government was required to prove that he "(1) knew of the presence of the contraband, (2) had

_____

[5] When Officer Eckert first spotted Caldwell, he was standing in front of 1606 17th Place (apparently, next door to appellant's apartment building).

the power to exercise dominion and control over it, and (3) intended to exercise dominion and control over it." *Ramirez v. United States*, 49 A.3d 1246, 1249 (D.C. 2012) (internal quotation marks omitted). Appellant contends that no reasonable juror could have found beyond a reasonable doubt that he knew about the contraband because it was hidden from view, he made no movement toward it, and he gave no "other indication that he knew what was tucked away under some clothes inside," "much less" that the other criteria for constructive possession were satisfied.

An appellant making a claim of evidentiary insufficiency "bears the heavy burden of showing that the prosecution offered no evidence upon which a reasonable mind could find guilt beyond a reasonable doubt." *Olafisoye v. United States*, 857 A.2d 1078, 1086 (D.C. 2004) (internal quotation marks omitted). In considering an evidentiary-insufficiency claim, we "view the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *Freeman v. United States*, 912 A.2d 1213, 1218 (D.C. 2006) (internal quotation marks omitted). "Expressed more fully, this means a reviewing court[,] faced with a record of historical facts that supports conflicting inferences[,] must presume — even if it does not affirmatively appear in the record — that the trier of

fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (internal quotation marks omitted).

"Although the government is entitled to any reasonable inferences, [a court reviewing an insufficiency-of-the-evidence claim] must consider all of the evidence including that favorable to the defendant." *United States v. Rapone*, 131 F.3d 188, 197 (D.C. Cir. 1997) (Silberman, J., concurring) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("[U]pon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.") (emphasis in the original); *United States v. Grey Bear*, 828 F.2d 1286, 1292 (8th Cir.), *vacated in part on other grounds*, 836 F.2d 1088 (8th Cir. 1987) (noting that the appellate court must review "the evidence taken as a whole, including that offered by the defendant"); *United States v. Beck*, 615 F.2d 441, 448 (7th Cir. 1980) ("The standard is not so strict that the defendant's evidence must be disregarded."). And, although "a jury is entitled to draw a vast range of reasonable inferences from evidence, it may not base a verdict on mere speculation." *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc) (internal quotation marks and brackets omitted). At the same time, the government "need not disprove every theory of

innocence in order to sustain a conviction." *Olafisoye*, 857 A.2d at 1086 (internal quotation marks omitted).

Constructive possession "may be proven by direct or circumstantial evidence." *Rivas*, 783 A.2d at 129. However, a defendant's mere presence on the premises where contraband is found or mere proximity to contraband is not enough to satisfy the test for constructive possession of the contraband. *Ramirez*, 49 A.3d at 1249; *Rivas*, 783 A.2d at 130. "Rather, there must be something more in the totality of the circumstances that — together with proximity and knowledge — establishes that the accused meant to exercise dominion or control over the [contraband]." *Rivas*, 783 A.2d at 130. "[P]roximity or association may establish a prima facie case of constructive possession if it is colored by evidence linking the accused to an ongoing criminal operation of which that possession is a part." *Guishard v. United States*, 669 A.2d 1306, 1312 (D.C. 1995) (internal quotation marks omitted). "[A]cts evincing consciousness of guilt" may also provide the essential link between the appellant and the contraband. *(Devenn) Smith v. United States*, 899 A.2d 119, 122 (D.C. 2006). In general, a jury may "infer that a person exercises constructive possession over items found in his home[,]" but this inference is "plainly not as strong" and may be unwarranted where the defendant

shares the premises with other people. *Moore v. United States*, 927 A.2d 1040, 1050 (D.C. 2007).

## III.    Analysis

Notwithstanding appellant's acquittal on the drug and drug paraphernalia charges, the evidence in this case was certainly sufficient to permit the jury to infer that appellant possessed the 53 bags of cocaine and the digital scale: They were in plain view, supporting an inference that he knew of them; and the evidence permitted the jury to find that he exercised dominion and control over the drugs by attempting to hide them from police and also to infer, from appellant's involvement with the drugs, that he intended to exercise dominion and control over the scale. "Where knowledge and ability to exert control over contraband are shown, the additional evidence necessary to prove constructive possession is comparatively minimal." *Moore*, 927 A.2d at 1050 (internal quotation marks omitted).

However, even viewing the evidence in the light most favorable to the government, as we must, we think a reasonable fact-finder must have been left

with reasonable doubt about whether appellant knew about the firearm and ammunition found hidden beneath clothing in the dresser drawer in the back bedroom and intended to exercise dominion and control over these items. Any inference of knowledge that might have been drawn from appellant's occupancy of the apartment was weakened because of the evidence that appellant shared the apartment with, or had given or yielded access to, several others. *See In re R.G.*, 917 A.2d 643, 649 (D.C. 2007) ("[W]hen two or more people are occupying a place, a defendant's control over the place is not by itself enough to establish constructive possession of contraband found there.") (internal quotation marks omitted).

Specifically, during the government's case-in-chief, the jury heard, or saw on the videotape, evidence that the nephew and Timothy Thomas were present in the ground-floor apartment along with appellant on the (early) morning of the search. The jury also heard Officer Cardinal's testimony that both men were "in the search warrant," from which they could infer that both men had a repeated if not regular presence in the apartment. The government's evidence (including the videotape) also established that the back bedroom had a door to the outside (that presumably would have enabled an individual to access the room without passing through the rest of the apartment). In addition, the jury heard Mason's testimony

for the defense that she and the nephew resided in the apartment, that each of them plus Timothy Thomas had stayed there the night before the search, that the nephew normally slept in the back bedroom, that the nephew and Timothy Thomas exited the apartment through the back bedroom when the police came; and that Caldwell had frequently and recently been in the apartment. The jury was not required to believe (and, for purposes of our analysis, we may not presume that they believed) any of Mason's testimony, but the foregoing testimony, uncontradicted, informs our view that, as to the firearm and ammunition, the government failed as a matter of law to prove appellant's knowledge and intent.[6]

The evidence that appellant was in the back bedroom in his underclothes at the time police arrived and that he had been sleeping there established that he had a connection with the back bedroom, as did the fact that, without protest, he accepted and donned clothing and shoes that Officer Quigley retrieved from the back bedroom. But the clothing was found on a chair in the back bedroom, rather than

---

[6] *Cf. Curry v. United States*, 520 A.2d 255, 262 (D.C. 1987) (concluding, in a case where police executing a search warrant at an apartment found several occupants and evidence of a drug-distribution operation, that the evidence was insufficient to sustain Curry's conviction for possession of a gun and ammunition that police found in her bedroom nightstand among her clothes, and relying on Curry's testimony and other defense evidence that she had lived in the apartment only sporadically and for only about two weeks, and that, at the time police arrived, she had been away from the apartment for several hours).

in a closet or in a drawer, a location consistent with Mason's claim that appellant did not usually occupy that room as his own.

We have often found that evidence was sufficient to establish a defendant's constructive possession of contraband where the contraband was recovered in proximity to the defendant's personal items such as mail or personal papers, photographs, and identification cards.[7]  Here, however, there was no evidence that any mail or papers, photographs, wallet, identification cards, or any other personal effects linked to appellant were found in the back bedroom where the gun and ammunition were found.  The videotape shows, sitting on a shelf in the back

---

[7]  *See, e.g.*, *(Tamara) Smith v. United States*, 55 A.3d 884, 885–86 (D.C. 2012) (evidence sufficed to establish defendant's constructive possession of a firearm found in a backpack, where the backpack was found next to the defendant's bed near a photograph of defendant, defendant's identification cards were in the pocket of a pair of shorts on the bed, and mail addressed to the defendant was in a file cabinet in the bedroom closet); *Ramirez*, 49 A.3d at 1250 (defendant's constructive possession of cocaine was proven where police found the cocaine in a pair of pants in a closet containing mail addressed to the defendant and photographs of the defendant, and the closet was near a bed that the appellant admitted to sleeping on); *Moore*, 927 A.2d at 1051 (evidence sufficed to prove defendant's constructive possession of contraband where the contraband was found in the apartment's only bedroom, "lying in plain view next to [the defendant's] personal papers."); *Guishard*, 669 A.2d at 1311 (defendant's constructive possession of a firearm was proven where the firearm was found in a dresser drawer and atop the dresser were two traffic tickets issued to the defendant and two medical bills addressed to him).

bedroom, a wallet with slots containing numerous papers or cards, but the government offered no evidence about the contents of the wallet, and — without contradiction — Mason testified that the wallet belonged to the nephew. Mason also testified without contradiction that the clothing in the drawer where the gun and ammunition were found belonged to the nephew. For its part, the government presented no evidence about the size or type of clothing found in the drawer, an omission that is particularly notable since the evidence established that appellant is a large man (defense counsel described him as "obese" in her opening statement), while the other men who were found in the apartment and were named in the search warrant are much smaller men,[8] who (it can reasonably be assumed) would have worn clothing much smaller than appellant could have worn.

Drawing all reasonable inferences in favor of the government, we take appellant's stance with his back to the door and his apparent effort to hide a distribution quantity of zipper bags after police, shouting loudly, entered the apartment with a battering ram, as evidence of his involvement with ongoing

---

[8] We say this based on the videotape. *Cf. Scott v. Harris*, 550 U.S. 372, 380-381 (2007) (explaining that although the court of appeals, in reviewing a grant of summary judgment, was required to view the facts in the light most favorable to the nonmoving party, the court also "should have viewed the facts in the light depicted by the videotape" that was part of the summary judgment record).

criminal drug activity and of his consciousness of guilt of *something.* But the jury would have had to speculate to conclude that he demonstrated guilty knowledge of the gun and ammunition in the drawer. We do not think that inferences that appellant (1) knew of the presence of the firearm and ammunition hidden beneath someone's clothing in the drawer and (2) intended to exercise dominion and control over them are reasonable inferences from the limited evidence the government presented. The prosecutor argued in closing that appellant "knew where that gun was" because "[i]t was his dresser, his clothes in it" and referred to "that dresser where he keeps his things, his clothes," but there actually was *no* evidence presented that the dresser (or the closet in the back bedroom) contained clothing belonging to appellant.

The government relies heavily on our case law recognizing that proximity to contraband may establish a prima facie case of constructive possession if there is also evidence linking the defendant "to an ongoing criminal operation *of which that possession is a part*." *Guishard*, 669 A.2d at 1312 (emphasis added). Its reliance is not entirely misplaced. Undisputedly, there was evidence linking appellant to an "ongoing criminal (drug distribution) operation"; the jury's verdict's acquitting appellant of the possession-with-intent-to-distribute-cocaine

charge "does not show that they were not convinced of [his] guilt"[9] of that charge. However, evidence that a defendant was "found [during the execution of a search warrant] to be involved in . . . illegal activity consisting of drug distribution" is not necessarily enough to show that "the loaded pistol [found in a bedroom during the search] was part of that operation" when "there were . . . others present in the apartment when the gun was found." *Curry*, 520 A.2d 255, 265-66 (D.C. 1987) (holding that the evidence that appellants Jones and Washington were found in the living room of the apartment with drugs and other evidence of drug distribution did "not permit a reasonable mind to fairly conclude beyond a reasonable doubt that either Jones or Washington, or both, knew of the existence of a loaded pistol in the bedroom nightstand," because appellant Curry, "amongst whose personal belongings the weapon was apparently found, or any of the three others present during the raid could have placed the loaded pistol in the bedroom nightstand unbeknownst to" Jones and Washington).[10]

---

[9] *Mayfield v. United States*, 659 A.2d 1249, 1255 (D.C. 1995).

[10] Nor did the evidence in *Curry* that "the loaded pistol was found in the bedroom nightstand amongst [Curry's] clothes," and that packets of heroin were found in the bedroom dresser on top of which there were items of identification belonging to her, lead to a conclusion that the evidence sufficed to convict her of possession of the gun and ammunition, because "a reasonable mind must concede the reasonable possibility that . . . any of the three others found in the midst of [the] drug distribution operation could have placed the weapon in the bedroom unbeknownst to its occupant." *Curry*, 520 A.2d. at 259-60, 262, 265 (so reasoning

(continued…)

Moreover, while we must assume the jury credited Detective Thomas's testimony about the "many instances where we find firearms in conjunction to narcotics," Detective Thomas did not testify that the co-presence of drugs and firearms was inevitable, or invariable, or even usual. Rather, Detective Thomas testified that "[s]ometimes drug dealers have been victimized" and that "[s]ome dealers want to possess a weapon as a form of protection." His generalized testimony about what "sometimes" occurs did little to make an inference that appellant knew of the gun and ammunition less speculative.[11]

---

(…continued)
notwithstanding Curry's acknowledgment that, to her knowledge, "nobody else slept there or used the bedroom").

[11] Detective Thomas's testimony was more tentative than expert testimony about the link between drugs and guns that has been given in some other cases. *See, e.g.*, *United States v. Bruce*, 939 F.2d 1053, 1054 (D.C. 1991) (referring to "expert testimony that "in today's operations drugs and guns go hand in hand'"); *Hinnant v. United States*, 520 A.2d 292, 293 (D.C. 1987) (D.C. 1989) (noting that the expert testified that a drug seller in the circumstances described in the case "would be likely to carry a gun to avoid being robbed"); *Curry v. United States*, 520 A.2d 255, 265 (D.C. 1987) (reasoning that expert testimony that drug dealers "typically" set up a security system to protect a house where drugs are sold "did not permit a blanket inference that a gun [found in the house] . . . comprised such a security system").

"Reasonable doubt is a doubt arising from the evidence, *or from a lack of evidence*, after consideration of all the evidence."  *Bishop v. United States*, 107 F.2d 297, 303 (D.C. Cir. 1939) (emphasis added).  "The reasonable doubt standard of proof requires the factfinder 'to reach a subjective state of near certitude of the guilt of the accused.'" *Rivas*, 783 A.2d at 133 (quoting *Jackson*, 443 U.S. at 315). For us to conclude that the evidence permitted the jury to find beyond a reasonable doubt that appellant constructively possessed the gun and ammunition, it is not enough that the evidence taken in the light most favorable to the government supported an inference that he "might have [known of and] intended to exercise dominion and control over the weapon, or even that it is more likely than not that []he had such [knowledge and] intent." *R.G.*, 917 A.2d at 648-49.  To be sure, the government was not required to negate all possibilities that appellant was innocent of the gun and ammunition possession charges.  But the prosecution's total failure to present  evidence of the kind discussed in the paragraphs above (i.e., evidence that might have established who owned the wallet found in the back bedroom and who could wear the clothes found in the dresser drawer) persuades us that the evidence as a whole was not "enough to establish beyond a reasonable doubt -- the most exacting standard of proof known to our law -- that [appellant] had the necessary personal relationship to the weapon and ammunition"[12] for his

_____

[12]  *In re T.M.*, 577 A.2d 1149, 1153 (D.C. 1990).

convictions to be sustained.  Accordingly, we concluded that his convictions must be, and they are hereby,

*Reversed.*

WAGNER, *Senior Judge*, dissenting:  Viewing the evidence "'in the light most favorable to government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact . . . ,'" as we must, the evidence was sufficient to sustain appellant's convictions.  *Moore v. United States*, 927 A.2d 1040, 1049 (D.C. 2007) (quoting *Curry v. United States*, 520 A.2d 255, 263 (D.C. 1987)) (restating our oft repeated standard of review for testing evidentiary sufficiency).  Only by crediting evidence and making inferences that the jury apparently rejected in this case can the majority conclude otherwise.  Such an analysis is inconsistent with our well-established precedents.  Although true, as the majority states, that in applying our familiar standard, courts have recognized that "we must consider all of the evidence including that favorable to the defendant," the principle remains that "the government is entitled to all reasonable inferences."  *United States v. Rapone*, 327 U.S. App. D.C. 338, 347, 131 F.3d 188, 197 (1997) (Silberman, J., concurring) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), for the proposition that "upon judicial review *all of the*

*evidence* is to be considered in the light most favorable to the prosecution"). Further, while recognizing that the reviewing court must consider "the evidence taken as a whole, including that offered by the defendant," in *United States v. Grey Bear*, cited by the majority, the court also made clear that it is the jury's province to make credibility determinations and resolve evidentiary conflicts that in turn are viewed in the light most favorable to the government. 828 F.2d 1286, 1292 (8th Cir. 1987), *vacated in part on other grounds*, 836 F.2d 1088 (8th Cir. 1987). Put another way, "[i]n general, a sufficiency challenge is to be evaluated in light of all the evidence adduced at trial, including any *inculpatory* evidence presented in the defense case, even if the government's evidence by itself would have been insufficient to sustain the conviction." *Moore*, *supra*, 927 A.2d at 1049 (emphasis added). As this court has stated repeatedly, "[w]e must deem the proof of guilt sufficient if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (emphasis in original) (quoting *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001)) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). When these well-established principles are applied to the facts of the present case, it is clear that the evidence was sufficient for a reasonable juror to find that appellant constructively possessed the handgun

and ammunition that the police found in a dresser drawer inside his residence where he was shown to be engaged in a drug operation.

Briefly stated, in the light most favorable to the government, the evidence showed that appellant actually resided in the two-bedroom apartment where the contraband was found.[1] The jury may infer that "a person exercises constructive possession over items found in his home" and that, although not as strong, the inference applies even when the person shares the premises with another. *See Moore*, *supra*, 927 A.2d at 1050 (citation omitted). At 7:00 a.m., when the police entered the smaller bedroom where the testimony showed appellant had slept the night before, he was standing in his underwear in close proximity to the dresser where the weapon and ammunition were found. There was testimony that appellant's fianceé and the child slept in the larger front bedroom and that the closet in that room contained only women's and children's clothing, while the smaller bedroom contained men's clothing. Later, a police detective retrieved a shirt and pants from the back bedroom that appellant, a remarkably large person, put on. When the police found appellant, he was facing away and appeared to be

[1] Appellant's fianceé, Valene Mason, testified that she lived in the apartment with appellant and their young daughter. A video taken of the apartment showed a family photograph of appellant, a woman, and child on the living room wall.

hiding something. When he complied with an order to show his hands, appellant dropped a man's white shoe that contained fifty-three green zip-lock bags filled with a substance later determined to be crack cocaine. *See Smith v. United States*, 899 A.2d 119, 122 (D.C. 2006) (holding that additional evidence that can prove the knowledge and intent elements of constructive possession includes "evidence linking the accused to an ongoing criminal operation of which possession is a part," attempts to hide evidence, and other actions showing consciousness of guilt). A digital scale was on the windowsill in plain view. The weapon and ammunition were found in a dresser drawer in that room, along with numerous empty, pink zip-lock bags. An expert witness testified that drugs and guns are often found together and that some drug dealers use firearms to protect themselves from robbers. He also testified about the packaging of illegal drugs in small, plastic ziplock bags, the use of a particular color of ziplock to identify the "brand" of drugs, and the use of digital scales by drug dealers to weigh drugs for sale. From this evidence, it was reasonable for the jury to conclude that appellant was engaged in an illegal drug operation of which possession of the weapon and ammunition were a part. *See Guishard v. United States*, 669 A.2d 1306, 1313 (D.C. 1995) (holding that, although not in plain view, the proximity of the gun in the room where defendants sold drugs was sufficient to permit the jury to infer they had convenient access and thus dominion and control over the weapon so as to establish constructive

possession.) As the cited cases show, we have held evidence like that presented in this case to be sufficient to prove that a defendant had constructive possession of a weapon and ammunition. *See, e.g.*, *Guishard*, *supra*, 669 A.2d at 1313.

Although Ms. Mason testified that appellant usually slept on the couch, that her nephew resided in the apartment, that except for the night before the raid the nephew usually slept in the back bedroom, that the wallet in the bedroom and clothing in the bedroom drawer belonged to her nephew, and that a drug dealer had brought a gun into the apartment, the jury was not required to credit this evidence. In assessing credibility, the jury is allowed to consider, among other things, whether a witness has any motive for not telling the truth and whether there are inconsistencies between the witness' testimony and other evidence in the case. In that connection, the jury was allowed to consider here that Ms. Mason's relationship with appellant might have given her a motive to provide him with exculpatory testimony. Further, her testimony that appellant stored his clothing in the front bedroom was inconsistent with Detective Quigley's testimony that she observed only female and a child's clothing in that closet, a matter that the jury could consider in deciding the extent to which to believe the witness. Given the jury's verdict, it is apparent that the jurors chose not to credit some of the evidence that might have been favorable to appellant and to infer from other credible

evidence that appellant was linked to the weapon and ammunition found in the drawer.

In challenges to evidentiary sufficiency, our standard of review requires us to view the evidence in the light most favorable to the government and to give "full play" to the right of the jury to determine the credibility of the witnesses, to weigh the evidence, to resolve any conflicts in the evidence, and to draw from the proven facts such reasonable inferences as the jury deems appropriate. *See Moore*, *supra*, 927 A.2d at 1049 (citing *Curry*, *supra*, 520 A.2d at 263). Applying that standard to the evidence in this case, a rational fact finder could find the essential elements of the offenses of conviction beyond a reasonable doubt. *See id*. Even if Ms. Mason's nephew and the other man named in the search warrant who were found hiding on a ledge outside the apartment's back door were also involved in the drug operation, the evidence was still sufficient to show that appellant possessed the weapon either solely or jointly with others. *See Guishard*, *supra*, 669 A.2d at 1313 (holding that "circumstantial evidence linking both appellants" to the gun hidden in a drawer "as well as to the drugs and other contraband found in the [shared] apartment" was sufficient to establish constructive possession).

For the foregoing reasons, I respectfully dissent from the opinion of the court.