BECKWITH, Associate Judge,
concurring in part and dissenting in part:
I join the court’s resolution of Jamel Evans’s Fourth Amendment claim, and I also agree with my colleagues that the ’ record contains sufficient evidence to support Mr. Evans’s conviction for possession of the firearm and ammunition found in the first bedroom. I disagree, however, that the evidence is sufficient to prove that Mr. Evans constructively possessed the gun found in the closet of the second bedroom.
After a comprehensive survey of our case law and a useful breakdown of its competing strands, the court turns to the circumstances of this case and concludes, in light of this case law, “that a reasonable fact-finder could find beyond a reasonable doubt that Mr. Evans intended to exercise dominion and control over the guns and ammunition” based on the evidence that Mr. Evans lived in the first bedroom where the ammunition and one of the guns were found, that clothes in the closet in that bedroom belonged to him, and that that gun and ammunition were found in plain view. Ante at 893-94. These facts, the majority opinion notes, make this case comparable to the decisions “in which we upheld findings of constructive possession based on the presence of contraband in plain view in a residence occupied by a defendant, where the contraband was proximate to personal items linked to the defendant.” Ante at 894.
Though the court concludes its discussion of our case law by finding sufficient evidence that Mr. Evans constructively possessed the plural “guns,” ante at 894, and asserts that “[t]he analysis with respect to the second gun is quite similar to the analysis with respect to the first,” ante at 891, none of the three principal factors the court relies on in deeming the evidence *897 sufficient with respect to the gun in the first bedroom applies to the gun found in a closet in the second bedroom. This gun was not in plain view.[1] It was not proximate to personal items linked to Mr. Evans. And the evidence in the record indicates that the first bedroom, not the room where this gun was found, was Mr. Evans’s room.[2]
The majority opinion instead relies heavily on an assertion that “the inference of constructive possession as to each gun is to a degree supported by the presence of the other.” Ante at 891. In support of this conclusion, the court cites a nonbinding decision concluding that a defendant’s possession of “the same or similar things at some other time is quite relevant to his knowledge and intent with regard to the crime charged.” Id. (quoting United States v. Dykes, 406 F.3d 717, 722 n. 5 (D.C.Cir.2005)). In Dykes, the court held that the fact that Dykes had been arrested nearby a week before in possession of marijuana was “further evidence” that he possessed marijuana that was found in a bedroom. Id. at 722.
As the court reminds us later in the opinion, there is an “important distinction” between “concluding that given evidence would reasonably permit a jury to infer constructive possession and concluding that the same evidence is by itself sufficient to establish constructive possession beyond a reasonable doubt.” Ante at 893 (citing Rivas v. United States, 783 A.2d 125, 131-33 (D.C.2001) (en banc)). Under the facts of this case, whatever the relevance of the gun in the closet of the first bedroom, it does not establish Mr. Evans’s constructive possession of the second gun beyond a reasonable doubt.
In' nearly every respect, the circumstances pertaining to the second gun align more with the cases the court cites that reverse on sufficiency grounds — namely Schools v. United States, 84 A.3d 503 (D.C. 2013), In re R.G., 917 A.2d 643 (D.C.2007), In re T.M., 577 A.2d 1149 (D.C.1990), Curry v. United States, 520 A.2d 255 (D.C. 1987), and Thompson v. United States, 293 A.2d 275 (D.C.1972) (per curiam). The court distinguishes these cases because “none ... involved contraband in plain view in the defendant’s bedroom, next to items linked to the defendant.” Ante at 894. But that characterization only describes the gun in the first bedroom. The gun in bedroom two was not in Mr. Evans’s bedroom, it was not in plain view, and it was not “recovered in proximity to the defendant’s personal items,” Schools, 84 A.3d at 510.
Other circumstances further weaken any inference that Mr. Evans intended to exercise dominion and control over the rifle in the closet of that room. While there was evidence that the apartment was Mr. Ev *898 ans’s apartment, the record contains signs that other people were connected to the two-bedroom apartment and that Mr. Evans may not have been its sole occupant. An officer testified that the second bedroom looked “[l]ived in” like the first bedroom.. Police found a judicial summons in the apartment addressed to a woman at that address, as well as a prescription in another woman’s name — facts, the trial court noted, that “certainly support[] a possible inference that someone else either resided there or had been there perhaps and that’s why those items were there.” The trial judge also acquitted Mr. Evans of possessing other items in the second bedroom because he was not convinced beyond a reasonable doubt that the jacket in which the marijuana was found or the box in which the ammunition was found were Mr. Evans’s.[3] And Shantay Taylor— the woman with whom Mr. Evans was arguing when police responded to a report of domestic violence and whom the prosecutor described as Mr. Evans’s girlfriend — had been in the apartment, and Mr. Evans’s statement that he was trying to get her out of the apartment supports an inference that she had been staying there.[4]
These circumstances are not sufficient under our case law to establish beyond a reasonable doubt that Mr. Evans eonstruc-tively possessed the gun in the second bedroom. So the court relies upon Mr. Evans’s constructive possession of the gun in the first bedroom to sustain a conclusion beyond a reasonable doubt that he intended to exercise dominion and control over the second gun. Yet absent some telling link between the rifle in the second bedroom and the gun or ammunition in the first bedroom — such as a match between the ammunition and the rifle, which the evidence does not show — this court’s conclusion that a factfinder could reasonably find Mr. Evans guilty of possessing the gun in the first bedroom is not sufficient to surmount all the circumstances that cut the other way as to the second gun.[5]
Under our case law, the determination in this case that Mr. Evans constructively possessed the gun in the second bedroom, while “plausible, ... cannot bear the weight of proof beyond a reasonable doubt.” James v. United States, 39 A.3d 1262, 1270 (D.C.2012) (quoting Commonwealth v. Rodriguez, 456 Mass. 578, 925 N.E.2d 21, 26 (2010)). I respectfully dissent from that portion of the court’s opinion.

. The majority says it is unclear whether the door to the closet in which the gun was found was open or closed when police entered the apartment, ante at 879-80, 890-91, but given that the rifle was positioned right by the closet door and that Officer Wendt saw no contraband in plain view when he entered and looked around the second bedroom during his initial room-by-room search of the apartment, ante at 878-79, it is apparent that the gun was not in plain view. The majority's description of the rifle's location as "apparently unhidden,” ante at 888, even if supported by the record, is not very probative if the officer never saw it during his search of the house.

. While both the court's opinion and Judge Ferren's opinion emphasize the lack of record evidence that others had "control over” the apartment, ante at 890-91, id. at 895 (Ferren, J., concurring), it is worth noting here that the government’s evidence that Mr. Evans was the primary occupant of the apartment— an officer’s statement that Mr. Evans was trying to expel Ms. Taylor from "his” apartment — was less than robust, and that it was not Mr. Evans’s burden to disprove possession by presenting evidence about the extent to which Ms. Taylor or others had resided in the apartment.

.Defense counsel argued in closing that the trial judge "had the ability for the last two days to observe the defendant sitting to my left. He clearly does not wear an extra-large jacket.... So then the question then becomes based on the Government’s evidence, whose jacket is this? We don't know who’s [sic] jacket it is.” Although Judge Ferren describes Ms. Taylor, Ms. Brunson, and Ms. Murray as the “only other possessory candidates,” his acknowledgement that the jacket may not have belonged to Mr. Evans suggests at least one other possessory candidate, particularly given Judge Ferren's view that it is unlikely the large men's jacket was Ms. Taylor’s. Ante at 895-96.

. The prosecutor drew the same inference, stating, in response to defense counsel's motion for judgment of acquittal, that "Your Honor can conclude that the apartment does, in fact, belong to the defendant, that Ms. Taylor had been staying at that apartment with him, [and] that he had kicked her out of the apartment, which was the source of the argument[.]”

. The trial court itself found its verdict on this count to be "a closer call,” in part because the government’s photograph of the closet in the second bedroom did not depict the items in that closet as clearly as its photograph of the closet in the first bedroom.