McLeese, J.,
concurring in the judgment in part and dissenting in part:
I agree with the court that Mr. Proctor is not entitled to relief based on the Fourth Amendment claim he raises for the first time in this court. I respectfully, dissent, however, from the court’s holding that the evidence was insufficient to support Mr. Proctor’s convictions for unlawful possession of a firearm by a felon and unlawful possession óf a large-capacity ammunition-feeding device.
I.
In brief, the evidence at trial was as follows. Mr. Proctor was stopped in front of 4877 F St., SE, for a traffic infraction. The car he was driving smelled strongly of unburnt marijuana. Inside the center console, the police found an ounce of marijuana in a sandwich bag, $270 in cash, mail addressed to Mr. Proctor, and an identification card for Mr. Proctor. In the back seat were a digital scale in plain view and approximately one-half pound of marijuana concealed in an opaque plastic bag. Mr. Proctor had $320 in cash on his person. The passenger in the car, Quintín Buck-mon, was also searched, but nothing was recovered from his person. Mr. Proctor was arrested.
Approximately three hours later, police officers executed a search warrant at 4877 F St. Four adults and two children were in the home at that time, including Shaunita Johnson, who is the mother of Mr. Proctor’s son. In one. of the three bedrooms on the third floor of the home, police found a CVS bag under a mattress. The bag contained a loaded handgun; an unspecified quantity of cash;- mail from SunTrust Bank addressed to Mr. Proctor at 4877 F St.; and children’s drawings, one of which had the name Jerome Proctor written on it. On a dresser in the same bedroom, police found an identification card for Ms. Johnson and mail addressed to Ms. Johnson at 4877 F St. In a closet in that bedroom, the police found men’s and women’s clothing; $2,180 in cash in the pocket of a men’á jackét; paperwork with Mr. Proctor’s name on it; and a clear box, inside of which were some empty sandwich bags and two clear bags containing over an ounce of marijuana.
An expert testified that the half-pound of marijuana found in the car could be purchased for $600 to $700 and could be sold on the street for approximately $2400 if broken down into smaller quantities. The two ounces of marijuana (one in the car console and one in the bedroom closet) each had a street value of approximately $150. Scales are typically used to weigh quantities of marijuana for sale, and sandwich bags are often used to package marijuana for sale.' The expert also testified that “a lot of time[s]” drug dealers keep a gun around to protect themselves, their drugs, and their money.
Mr. Proctor called three witnesses. Ms. Johnson testified that she and her son lived with Mr. Proctor in the bedroom in which the handgun was found. According to Ms. Johnson, the handgun was hers, and she hid the handgun in the CVS bag when she heard the police entering to exe *409 cute the search warrant. Ms. Johnson testified that the mail addressed to Mr. Proctor was not in the CVS bag but instead was on the floor under the bed. Mr. Buck-mon, the passenger in the car, testified that he lived with Mr. Proctor at 4877 F St. and that they were good friends. According to Mr. Buckmon, the marijuana in the car was his. Finally, Mr. Proctor’s mother Tonya Hall testified that she lived in one of the other bedrooms at 4877 F St., that she used the closet from which the marijuana was recovered, and that the marijuana in that closet was hers.
II.
Mr. Proctor does not dispute that the evidence was sufficient to support his conviction for possession of marijuana with the intent to distribute. Mr. Proctor does contend that the evidence was insufficient to support a conclusion that he possessed the handgun found in the CVS bag. I would hold to the contrary.
The applicable standard of review is well settled:
In considering a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the government, giving full play to the right of the [fact-finder] to determine'credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence. ... The evidence is sufficient if, after viewing it in the light most favorable to the prosecution, any 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'... Although a fact-finder is entitled to draw a vast range of reasonable inferences from evidence, the fact-finder may not base a verdict on mere speculation. Appellate review of the sufficiency of the evidence is not toothless, and we have an obligation to take seriously the requirement that the evidence in a criminal prosecution must be strong enough that a fact-finder behaving rationally really could find guilt beyond a reasonable- doubt.
Evans v. United States, 122 A.3d 876, 887 (D.C. 2015) (brackets, citation, and internal quotation marks omitted).
To establish that Mr. Proctor constructively possessed the handgun at issue, the United States was required to prove beyond a reasonable doubt that Mr. Proctor knew of the presence of the handgun, had the power to exercise dominion and control over the handgun, and intended to exercise such dominion and control. E.g., Evans, 122 A.3d at 887. The United States’s theory at trial was that Mr. Proctor was selling marijuana and possessed the handgun to protect his drug-dealing activities. In my view the jury could reasonably accept that theory. It appears to be undisputed that the evidence permitted the jury to conclude that Mr. Proctor was selling large quantities of marijuana and generating significant amounts of cash, and expert testimony indicated that drug dealers often keep guns for protection. Moreover, it appears to be undisputed that Mr. Proctor stayed in the bedroom in which the handgun was found. That bedroom also contained marijuana, a significant amount of cash, and drug-packaging materials. The jury’s finding of guilt is thus strongly supported by the principle that “proof of constructive possession may be furnished by evidence linking the accused to an ongoing criminal operation of which that possession is a part.” Burnette v. United States, 600 A.2d 1082, 1084 (D.C. 1991) (internal quotation marks omitted).
As the court notes, ante at 406, we have rejected a bright-line rule .that there is always sufficient evidence to support a conviction for possessing a gun if the defendant is involved in drug-dealing and the *410 gun is found in an apartment that the defendant shares with others. Schools v. United States, 84 A.3d 503, 509-12 (D.C. 2013). In the present case, however, the jury’s verdict finds strong support from another critical circumstance:, the handgun was found not merely in the bedroom where Mr. Proctor stayed, but in a bag that contained mail addressed to Mr. Proctor. As we explained in Schools, “We have often found that evidence was sufficient to establish a defendant’s constructive possession of contraband where the contraband was recovered in proximity to the defendant’s personal items such as mail or personal papers, photographs, and identification cards.” Id. at 510.
Viewing the totality of the evidence in the light most favorable to the jury’s verdict, I conclude that the jury acted reasonably in finding that Mr. Proctor constructively possessed the handgun at issue. We have in a number of cases upheld, findings of constructive possession based on comparable or weaker evidence. See, e.g., Smith v. United States, 55 A.3d 884, 886-90 (D.C. 2012) (sufficient evidence that defendant constructively possessed contraband inside child’s, backpack" in master bedroom of apartment defendant occupied; although others also occupied apartment and contraband'was not in plain view, backpack was conspicuous and located near items belonging to defendant, and evidence indicated that defendant had been alone in master bedroom for week before police search discovered contraband in backpack); Stewart v. United States, 395 A.2d 3, 6 (D.C. 1978) " (sufficient evidence that defendant Stewart constructively possessed marijuana in apartment where defendant Stewart lived; although' another defendant also lived in apartment and defendant Stewart was not present at time of search; .apartment contained substantial quantity of marijuana, readily- observable throughout apartment,; including on dresser in bedroom near items bearing defendant Stewart’s name); Hooker v. United States, 372 A.2d 996, 996-97 (D.C. 1977) (sufficient evidence that defendant constructively-possessed contraband found in bedroom occupied by defendant in home defendant shared with mother; although contraband was not in plain view and others “might have had occasional access to the room,” bedroom contained defendant’s personal belongings; some contraband was in nightstand; and some contraband was in dresser drawer that contained papers bearing defendant’s name- and what could be inferred to be defendant’s underwear).
I am aware of no decision, from this court or any other, holding that comparable evidence was insufficient to support a jury’s finding of constructive possession. In the- two' cases upon which the court principally relies — Schools and Curry v. United States, 520 A.2d 255 (D.C. 1987)— the evidence that the defendants constructively possessed a weapon was substantially weaker than the evidence in the present case. In Schools, it was unclear whether the defendant usually occupied the bedroom from which the gun was recovered. 84 A.3d at 510. Moreover, as we emphasized, “there was no evidence that any mail or papers, photographs, wallet, identification cards, or any other personal effects linked to appellant were found in the back bedroom where the gun and ammunition were found.” Id. In the present case, by contrast, it is undisputed that Mr. Proctor was staying in the bedroom at issue, and papers linked to. Mr. Proctor were not just in the bedroom but were in the same bag as the handgun.
■ .In Curry, a loaded handgun was found hidden among women’s clothing in a drawer of a bedroom nightstand. 520 A.2d at 260. We held that the evidence was insufficient -to support a finding that Ms. Curry possessed that handgun, because although *411 personal papers in her name were on a dresser in same bedroom, she shared the apartment with others and there was evidence that she stayed there intermittently; two other male defendants were convicted of conducting a drug-selling operation from the apartment; Ms. Curry was not present at the time of the search and was not shown to have been present in the preceding five hours; and five others were present at the time of the search and could have hidden the handgun among Ms. Curry’s possessions. Id. at 260, 264-66. As to the two male defendants, we held that the evidence was insufficient because they did not sleep in the apartment; the handgun was in a bedroom hidden among women’s clothing; others had access to the apartment and were present at the time'of the search; and no evidence tied the handgun to drug-selling. Id. at 265-66. Among the critical differences between Curry and the present case are (1) in the present pase there was evidence that drug dealers often use guns for protection; (2) in the present case the handgun was in the same bedroom as some of the marijuana, drug-packaging material, and a substantial amount of cash, which strengthens the inference that the handgun was possessed in connection with drug-dealing activities; and (3) in the present case, Mr. Proctor was both directly involved in the drug-dealing operation and closely tied to the handgun by the personal papers found in the bag with the handgun.
In holding that the evidence in this case in insufficient, the court in my view missteps in several additional respects. First, the court does not view the evidence in the light most favorable to the jury’s verdict, instead for example relying on the speculative. possibility that, a police officer was mistaken in testifying that Mr. Proctor’s personal papers were in the CVS-bag. E.g., ante at 406-07. Second, the court without explanation dismisses the expert testimony about the frequent association between guns and drug-dealing as “quite speculative ... in the factual context of this case.” Ante at 407. Cf., e.g., Reed v. United States, 828 A.2d 159, 163 (D.C. 2003) (in assessing sufficiency, of the evidence, court notes, “The fact that appellant was in possession of a knife and a large quantity of drugs at the same time is also significant; as has often been observed, drugs and weapons go together,”) (internal quotation marks omitted). Third, the court erroneously considers particular items of inculpa-tory evidence in isolation, rather than considering the evidence in its totality. Ante at 406-08. See, e.g., In re K.M., 75 A.3d 224, 235 n.6 (D.C. 2013) (“[T]he sufficiency of the evidence must in the end be assessed in light of the evidence taken as a whole, viewed in the light most favorable to the [fact-finder’s] findings,” rather than by “weighting] various pieces of evidence in isolation ....”); cf. Bynum v. United States, 133 A.3d 983, 988 (D.C. 2016) (“Although each fact viewed individually may not point unerringly to the appellant as possessing the requisite guilty knowledge, when taken as a whole, together with their legitimate inferences, they permit a finding of such guilty knowledge beyond a reasonable doubt.”) '(internal quotation marks omitted). Finally, the court imper-missibly relies on testimony presented by Mr. Proctor that thé jury was free to, and apparently did, discredit. Ante at 406-07 (relying on Ms. Johnson’s testimony that she purchased the handgun and that Mr. Proctor’s personal papers were not in the bag with the handgun). See, e.g., Bassil v. United States, 147 A.3d 303, 308 (D.C. 2016) (“Our obligation to view the evidence in the light most favorable to the prosecution almost always commands that we assume that the jury in its assessment of credibility did not believe the defendant’s exculpatory testimony, and we must, defer *412 to the jury’s prerogative in this area.”) (brackets and internal quotation marks omitted).
For the foregoing reasons, I would hold that the evidence was sufficient to support the jury’s finding that Mr. Proctor was guilty of possessing the handgun at issue. I would therefore affirm Mr. Proctor’s convictions for unlawful possession of a fee-arm by a felon and unlawful possession of a large-capacity ammunition-feeding device. I respectfully dissent from the court’s contrary conclusion.