*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CM-1173

JAMEL EVANS, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-6109-13)

(Hon. John McCabe, Trial Judge)

(Argued December 16, 2014                           Decided August 6, 2015)

*Murray Kamionski* for appellant.

*James A. Ewing*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Karen Seifert*, Assistant United States Attorneys, were on the brief, for appellee.

Before BECKWITH and MCLEESE, *Associate Judges*, and FERREN, *Senior Judge*.

Opinion for the court by *Associate Judge* MCLEESE.

Concurring opinion by *Senior Judge* FERREN at page 43.

Opinion concurring in part and dissenting in part by *Associate Judge* BECKWITH at page 47.

MCLEESE, *Associate Judge*:    Appellant Jamel Evans challenges his convictions for attempted possession of unregistered firearms and attempted unlawful possession of ammunition.    Mr. Evans argues that the trial court erroneously admitted evidence obtained in violation of the Fourth Amendment and that the evidence was insufficient to support his convictions.  We agree with Mr. Evans's Fourth Amendment claim but conclude that the evidence was sufficient. We therefore reverse and remand for further proceedings.

## I.

Viewed in the light most favorable to the verdict, the government's evidence at trial indicated the following.  In April 2013, Mr. Evans called 911 to report a domestic-violence assault.  When Officer Daniel Gray responded, he found Mr. Evans and Shantay Taylor arguing in the parking lot of an apartment building.  Mr. Evans was bleeding, and Ms. Taylor had blood on her clothes.  Ms. Taylor said that Mr. Evans had punched her several times.  Mr. Evans stated that the two had been in his apartment and that Ms. Taylor had hit him, scratched him, and assaulted him with an ashtray.  Mr. Evans told the police that he was trying to get Ms. Taylor out of his apartment.  Neither Mr. Evans nor Ms. Taylor indicated that anyone else was involved in the incident or was present in Mr. Evans's apartment.

While Officer Gray and his partner were talking with Mr. Evans and Ms. Taylor, Officer Michael Wendt arrived and walked into the apartment building. Officer Wendt saw blood outside of apartment 201, and the door to that apartment was open. Officer Wendt entered the apartment and looked through the apartment room by room. In one bedroom, he saw a gun leaning against the wall of an open closet. He also saw a .38-caliber round of ammunition, sitting on a dresser in the same bedroom. Officer Wendt entered a second bedroom but did not see any contraband in plain view in that bedroom.

In a subsequent search of the apartment pursuant to a search warrant, the police recovered a 16-gauge shotgun from a bedroom closet. There was men's clothing in that closet.[1] The bedroom was messy and contained an unmade bed. In the same bedroom, the police recovered the round of .38-caliber ammunition from

---

[1] The government introduced a number of photographs into evidence at trial, including photographs depicting the contents of the closet. Those photographs were returned to the prosecutor at the close of the trial. Although exhibits admitted into evidence are part of the record on appeal, D.C. App. R. 10 (a)(1), neither party has taken steps to make the photographs available to this court. The parties do not appear to dispute the contents of the photographs, and we therefore rely on the trial court's findings and the undisputed statements of the parties about the photographs.

the top of the dresser. On top of that dresser the police also found a pill bottle with the name Yvette Murray.

In a closet in a second bedroom, the police found a .22-caliber rifle. It is unclear whether the door to that closet was open or closed when the police entered the apartment. The rifle was right inside the door to the closet, in the same position as the gun in the first closet. The second bedroom also contained an animal cage. On top of that cage was a box containing rounds of 9-millimeter ammunition. An extra-large men's jacket was also lying on top of the cage. The police found six zip lock bags containing marijuana in one of the pockets of that jacket. It is unclear whether the second bedroom contained a bed. The police found a judicial summons in the apartment. The name "Christina Brunson" and the apartment's address appeared on that summons. Finally, Mr. Evans had not registered the guns or any .38-caliber weapon.

The trial court found Mr. Evans guilty of attempted possession of both guns and of the round of .38-caliber ammunition. The trial court acquitted Mr. Evans of the charges relating to the ammunition inside the box in the second bedroom and the marijuana inside the coat in that bedroom.

## II.

Mr. Evans argues that Officer Wendt's initial search of the apartment was unlawful under the Fourth Amendment and that the evidence of the contraband recovered from the apartment was inadmissible. We agree.

## A.

We first provide additional factual background relevant to Mr. Evans's Fourth Amendment claim. The evidence indicated that Officer Wendt arrived at the parking lot outside 622 Eastern Avenue within two minutes after he heard the radio call concerning an alleged domestic-violence incident at that address. When he arrived, two officers were already separately interviewing Mr. Evans and Ms. Taylor. Officer Wendt saw blood on Mr. Evans's head and heard Mr. Evans say that he been hit with an ashtray. Officer Wendt could see that Ms. Taylor was excited, but he did not speak with her. After standing and watching for less than five minutes, Officer Wendt entered the apartment building.

When Officer Wendt saw blood outside of Apartment 201, he entered that apartment. He entered because he was concerned that another victim might be

inside, he was looking for weapons, and he wanted to determine whether the apartment needed to be secured as a crime scene. Officer Wendt looked through the apartment room by room, checking whether anyone else was in the apartment.

After Officer Wendt noticed a gun and a round of ammunition in the apartment, police officers secured the apartment and obtained an emergency search warrant. The affidavit in support of the search warrant described the altercation between Ms. Taylor and Mr. Evans. The affidavit also described Officer Wendt's entry into apartment 201 and his discovery of a shotgun and a round of ammunition. The affidavit also indicated that Ms. Taylor told police that Mr. Evans sold marijuana and that she had seen Mr. Evans bagging up marijuana in the apartment that morning. The affidavit alleged that there was probable cause to believe that the apartment contained the contraband Officer Wendt had seen, additional weapons and ammunition, marijuana, and other evidence of a drug offense.[2]

---

[2] The search warrant was admitted into evidence in connection with the motion to suppress. Although the parties agreed that the evidence admitted in connection with the motion to suppress could also be considered as evidence with respect to guilt or innocence, neither the parties nor the trial court treated the allegations in the affidavit in support of the search warrant as substantive evidence on the issue of guilt or innocence. For that reason, and because consideration of those allegations as substantive evidence would raise significant issues of

(continued…)

**B.**

The United States argues primarily that Officer Wendt's warrantless entry was lawful under the "emergency aid" exception to the warrant requirement. We conclude otherwise.

The Fourth Amendment permits an officer to enter a dwelling without a warrant if the officer has "an objectively reasonable basis for believing" that entry is necessary "to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 406, 403 (2006). Although this court has previously required that police have "probable cause to believe that immediate entry [was] necessary," *United States v. Booth*, 455 A.2d 1351, 1355 (D.C. 1983), we have not had occasion to address that requirement in light of *Brigham City*'s use of the phrase "reasonable basis for believing." *Compare, e.g.*, *United States v. Infante*, 701 F.3d 386, 392-93 (1st Cir. 2012) ("reasonable-basis standard "approximat[es] probable cause"), *with, e.g.*,

---

(…continued)
admissibility, we do not consider those allegations in assessing the sufficiency of the evidence.

*United States v. Porter*, 594 F.3d 1251, 1258 (10th Cir. 2010) (reasonable-belief standard "is more lenient than the probable cause standard"). We need not address the potential implications of *Brigham City* in this case. Even applying a less stringent reasonable-belief standard, we conclude that the police did not have adequate reason to believe that immediate entry was necessary to provide emergency aid.

As a preliminary matter, we note that the United States bore the burden of establishing the legality of Officer Wendt's warrantless entry. *See, e.g.*, *Womack v. United States*, 673 A.2d 603, 617 (D.C. 1996) ("[I]f a warrantless search or seizure produced evidence that the government seeks to introduce at trial, the burden is on the government to overcome the presumption of illegality by justifying the search based on facts that could bring it within certain recognized, limited exceptions to the warrant requirement."); *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1164 (9th Cir. 2014) ("the government bears the burden of showing specific and articulable facts to justify" invocation of emergency-aid exception) (internal quotation marks omitted). Without deciding the issue, we also accept the United States's statement during oral argument that the legality of Officer Wendt's entry must be assessed based not solely on what Officer Wendt knew at the time of entry, but also on what the other investigating

officers on the scene knew at that time. *Cf., e.g.*, *Parsons v. United States*, 15 A.3d 276, 279 (D.C. 2011) ("The doctrine of collective knowledge is firmly established in this jurisdiction and provides that although individual officers may not have sufficient knowledge to establish probable cause, the information collectively known, even if not communicated by one officer to the other, can be sufficient.") (internal quotation marks and brackets omitted); *Turner v. United States*, 623 A.2d 1170, 1172 n.2 (D.C. 1993) (collective-knowledge doctrine "must apply equally to information augmenting or diminishing the objective basis the police have for conducting a seizure").

In this case, Officer Wendt knew at the time of entry that he had been called to the scene to respond to an alleged incident of domestic violence; that other officers were separately interviewing a man and a woman in the parking lot of the building to which the police had been called; that the man was bleeding profusely from the head, all over the ground; that the man said that he had been hit by an ashtray; and that there was blood leading into the apartment. Other officers on the scene had interviewed Mr. Evans and Ms. Taylor for five or ten minutes before Officer Wendt entered the apartment. Officer Gray had spoken with Ms. Taylor, who described an altercation involving only herself and Mr. Evans. It is less clear whether Officer Gray had spoken to Mr. Evans by the time Officer Wendt entered

the apartment, or precisely what Mr. Evans had said to another officer who spoke to Mr. Evans first. It appears, however, that by the time of Officer's Wendt's entry the police also had an account from Mr. Evans describing a physical altercation involving only Mr. Evans and Ms. Taylor.

In defending the legality of Officer Wendt's entry, the United States contends that Officer Wendt could reasonably have feared that there might have been someone else injured in the apartment. Although it was of course possible that someone else was in the apartment in need of assistance, we must apply a reasonable-basis standard, not a bare-possibility standard. *See, e.g.*, *Nelms v. Wellington Way Apts., LLC*, 513 F. App'x 541, 545 (6th Cir. 2013) (unpub.) (under emergency-aid doctrine, officers' "decision to enter must be based on more than a hunch or the mere possibility that someone inside needs immediate aid") (internal quotation marks omitted); *cf., e.g.*, *Ramsey v. United States*, 73 A.3d 138, 152 (D.C. 2013) ("bare possibility" insufficient to establish reasonable articulable suspicion to support investigative detention).

At the time of the entry in this case, the police had no specific reason to believe that an unknown third party was in the apartment and in need of emergency

aid. Mr. Evans and Ms. Taylor had given accounts of the incident without suggesting that a third party was in the apartment. Moreover, those accounts and the officers' observations of the blood flowing from Mr. Evans fully explained the blood Officer Wendt saw by the apartment. It is true that Mr. Evans and Ms. Taylor might have been lying to cover up the fact that an injured third party was still in the apartment. But the United States has not pointed to anything that would have given the officers reason to believe that Mr. Evans and Ms. Taylor in fact were lying. Courts in other jurisdictions addressing comparable circumstances have found inadequate justification for a warrantless entry. *See, e.g.*, *United States v. Wolfe*, 452 F. App'x 180, 183-84 (3d Cir. 2011) (unpub.) (officer's warrantless search of second floor of home unreasonable under emergency-aid doctrine, where police were admitted to home after responding to 911 call, victim was bleeding from hand and told police that he had been shot in hand while outside home, and victim's mother said that no one else was present in home; searching officer had no reason to believe trail of blood on stairs to second floor belonged to anyone other than victim or that additional victims or threats were in home); *Hannon v. State*, 207 P.3d 344, 344-48 (Nev. 2009) (officer's warrantless entry into apartment unreasonable under emergency-aid doctrine, where officer responded to 911 call for possible domestic-violence assault, man and woman answered door, both appeared upset but uninjured, and both said that no one else was present; officer

had no reason "to believe that [the] apartment may have harbored an unidentified third person in need of emergency assistance"); *People v. Allison*, 86 P.3d 421, 427-30 (Colo. 2004) (officer's warrantless search of second floor of residence unreasonable under emergency-aid doctrine, where police officers responded to 911 call, woman with bloody nose let officers into residence, residence was in disarray, woman initially denied having been assaulted but eventually admitted that her husband had assaulted her, husband came downstairs and was placed under arrest, woman was removed from residence for interfering with officers, and both woman and husband described physical fight involving only two of them; "the police here had no indication that children were involved or that any third party might have participated in the dispute and needed emergency assistance"); *Richardson v. City of Antioch*, 722 F. Supp. 2d 1133, 1141-42 (N.D. Cal. 2010) (officer's warrantless entry into home was unreasonable under emergency-aid doctrine, where apparent victims were outside home and "safely in company of police," there were no signs of danger coming from home, and twenty-six minutes passed from time apparent victims exited home to time police entered home).[3]

---

[3]    Although the United States suggests in passing in a footnote that the police could reasonably have been concerned about possible evidence tampering, we conclude that immediate warrantless entry to prevent evidence tampering was not reasonably necessary.  As we have already explained, the police lacked a reasonable basis to believe that a third party was in the apartment.  *See, e.g.*, *United States v. Dawkins*, 305 U.S. App. D.C. 83, 89-90, 17 F.3d 399, 405-06

(continued…)

**C.**

The United States also advances two arguments in support of the contention that the evidence recovered from the apartment should have been admitted even if Officer Wendt's entry was unlawful. First, the United States argues that the seizure of the guns and ammunition was not the forbidden fruit of Officer Wendt's entry, because the police officers seized those items pursuant to a search warrant that was adequately supported by probable cause to believe that the apartment contained evidence of assault and of Mr. Evans's possession of marijuana. Second, the United States argues that the police in any event acted in good faith. The United States did not make these arguments in the trial court, and the trial court did not address them. Nevertheless, "we may affirm a judgment on any valid ground, even if that ground was not relied upon by the trial judge or raised or considered in the trial court, so long as doing so would not be procedurally unfair."

---

(…continued)
(warrantless entry into dwelling to prevent destruction of evidence was unreasonable, because officers lacked reasonable belief that anyone was inside dwelling), *amended*, 356 U.S. App. D.C. 61, 327 F.3d 1198 (1994); *cf. Illinois v. McArthur*, 531 U.S. 326, 333-34 (2001) (discussing with approval technique of sealing apartment from outside while obtaining warrant, in order to preserve evidence).

*Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1020-21 (D.C. 2013) (internal quotation marks omitted); *Jaiyeola v. District of Columbia*, 40 A.3d 356, 372-73 (D.C. 2012) (in absence of procedural unfairness, court may in its discretion uphold judgment on theory different from that relied upon by trial court); *cf. generally Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 39 (1989) (Supreme Court will consider grounds for affirmance not "raised below . . . only in exceptional cases") (internal quotation marks omitted). We do not find the United States's newly raised arguments to provide a basis for affirmance.

**1.**

We conclude that considerations of procedural fairness preclude affirmance based on the United States's forbidden-fruit argument. The United States acknowledges that its argument on this point could prevail only if, assuming that Officer Wendt had not entered the apartment and seen the gun and the round of ammunition, the officers nevertheless would have obtained a warrant to search for evidence of the assault or of Mr. Evans's alleged marijuana possession. *Cf. Murray v. United States*, 487 U.S. 533, 543 (1988) (under independent-source doctrine, unlawful warrantless entry into warehouse would not require suppression

of evidence obtained during subsequent search of warehouse pursuant to warrant, if (1) warrant is based on information independent of what officers saw during initial warrantless entry and (2) trial court makes factual finding that officers would have sought warrant even if they had not previously entered warehouse). In this case, however, the trial court had no occasion to make a factual finding as to what the officers would have done if Officer Wendt had not entered the apartment. Moreover, the officers did not testify about what they would have done if Officer Wendt had not entered the apartment.

The United States argues, however, that this court could itself conclude that the officers would have gotten a warrant even if Officer Wendt had not entered the apartment. Specifically, the United States contends that the warrant itself proves that point, because the warrant refers only to a drug offense when specifying the violation of law at issue. We disagree with the United States's contention in three respects. First, the search warrant does not shed very direct light on what the officers would have done if Officer Wendt had not entered the apartment. Although the warrant's sole legal citation involves a drug violation, the warrant also recites the allegation that police had seen a firearm in the apartment. In addition, the warrant authorizes the police to search for and seize that firearm and any other firearms, ammunition, and related paraphernalia. The current record thus

is not clear about what the officers would have done if Officer Wendt had not entered the apartment. Second, in any event, it is not our function to decide issues of fact. *See, e.g.*, *V.C.B. v. United States*, 37 A.3d 286, 291 (D.C. 2012) ("It is incumbent upon us, in this case as in any other, to eschew appellate fact-finding and to avoid usurping the function of the trial court.") (citation and internal quotation marks omitted); *cf. In re L.J.*, 906 A.2d 249, 254-55 n.5 (D.C. 2006) (declining to consider alternative ground for affirmance raised for first time on appeal, because trial court had not made necessary factual findings); *cf. Murray*, 487 U.S. at 542-43 (where trial court made no explicit finding as to whether officers would have obtained warrant to search warehouse if they had not previously entered warehouse without warrant and seen evidence, court of appeals could not resolve that issue; "[I]t is the function of the District Court rather than the Court of Appeals to determine the facts, and we do not think that the Court of Appeals' conclusions are supported by adequate findings."). Third, it would be particularly inappropriate for this court to decide an essentially factual question raised for the first time on appeal, because such an approach would deprive Mr. Evans of the opportunity to develop a record on that factual issue. *See, e.g.*, *In re Walker*, 856 A.2d 579, 586 (D.C. 2004) (declining to affirm based on alternative argument not raised in or decided by trial court; such affirmance would be

procedurally unfair, because appellant had no "opportunity to make an appropriate factual . . . presentation with respect thereto").

At oral argument, the United States contended in the alternative that the case should be remanded to the trial court for further proceedings on the question whether the officers would have sought a warrant if Officer Wendt had not entered the apartment. We disagree. First, the United States raised this contention for the first time at oral argument, and Mr. Evans therefore has not had an opportunity to brief the issue. *See, e.g.*, *Jung v. Jung*, 844 A.2d 1099, 1112 n.9 (D.C. 2004) ("We usually do not consider claims raised for the first time during oral argument because of the unfairness to the opponent, who has not had an opportunity to consider and present a response."). Second, the government bore the burden of proof on the question whether the police would have sought a warrant even if Officer Wendt had not entered the apartment. *See, e.g.*, *State v. Cardenas*, 155 P.3d 704, 709-10 (Idaho 2006) ("The burden of proof is on the prosecution to establish an independent source.") (internal quotation marks omitted); *cf. Nix v. Williams*, 467 U.S. 431, 444 (1984) (under inevitable-discovery doctrine, government must "establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means"); *Barnett v. United States*, 525 A.2d 197, 200 (D.C. 1987) ("the burden is

on the government to go forward with evidence that will bring the case within one or more exceptions to the exclusionary rule"). The United States had a full opportunity at the original suppression hearing to develop the factual record it deemed necessary to support the admissibility under the Fourth Amendment of the evidence at issue. We are not inclined to remand to give the United States a second opportunity to develop the record on this point. *Cf., e.g.*, *Barnett,* 525 A.2d at 200 (declining United States's request for remand to introduce additional evidence with respect to Fourth Amendment motion; "We are not persuaded that the government should have a second chance to elicit facts supporting an affirmance of the trial court's ruling as the record indicates that it had a full and fair opportunity to present whatever facts it chose to meet its burden of justifying the warrantless arrest and resulting search and seizure."); *United States v. Leonzo*, 311 U.S. App. D.C. 134, 136, 50 F.3d 1086, 1088 (1995) (declining to permit United States to present new evidence at resentencing after remand, because United States "had the burdens of production and persuasion, and [court saw] no reason why [United States] should get a second bite at the apple").

**2.**

The United States also argues that suppression is not appropriate because the officers acted in objectively reasonable good faith. Specifically, the United States argues that Officer Wendt's decision to enter the apartment without a warrant was "close enough to the line of validity" to make it reasonable for the officers to thereafter rely on the trial court's decision to issue a search warrant authorizing the police to seize the evidence at issue. Because that argument raises a pure question of law, and Mr. Evans had an opportunity to respond to that argument in this court, we exercise our discretion to consider it, even though the United States did not raise the argument in the trial court and the court did not rule on the argument. *See, e.g.*, *Sheetz v. District of Columbia*, 629 A.2d 515, 519 n.5 (D.C. 1993) (considering alternative ground for affirmance not raised in trial court, where alternative ground was legal in character and appellants had adequate opportunity to respond). We conclude, however, that the United States's argument is foreclosed by our decision in *Smith v. United States*, 111 A.3d 1 (D.C. 2014).

In *Smith*, police officers obtained an arrest warrant for the defendant based on evidence they had seized during an earlier traffic stop. 111 A.3d at 4. When

the police executed the arrest warrant, they recovered marijuana. *Id.* Concluding that the original traffic stop was unlawful, the trial court suppressed the evidence seized during that traffic stop. *Id.* at 5. The trial court declined, however, to suppress evidence of the marijuana the police seized during execution of the arrest warrant, because the officers who executed the warrant were entitled to rely on the issuance of the warrant. *Id.* at 5-6.

On review, this court held that the trial court should also have suppressed the evidence of the marijuana seized during execution of the arrest warrant. 111 A.3d at 6-9. The court first ruled that the initial traffic stop violated the Fourth Amendment, even assuming that the traffic stop rested on a reasonable mistake of law. *Id.* at 6-7. The court further concluded that the issuance of an arrest warrant based on illegally obtained evidence did not "purge the taint" of the initial illegality. *Id.* at 7-9. Finally, the court explained that, under our cases, suppression was required under the exclusionary rule even if the initial traffic stop "was close enough to the line of validity" to constitute a "good faith attempt to comply with the" law. *Id.* at 8 n.9 (internal quotation marks omitted; citing *In re T.L.*, 996 A.2d 805 (D.C. 2010)).

Although *Smith* involved an arrest warrant and the present case involves a search warrant, we see no reason why that detail should affect the analysis. We therefore view the exclusionary-rule analysis in *Smith* as fully applicable to the present case. Under the logic of *Smith*, the subsequent issuance of the search warrant in this case, based on information obtained during Officer Wendt's unlawful entry, did not operate to attenuate the illegality of Officer Wendt's entry. Moreover, under *Smith*, suppression is required in this case without regard to whether Officer Wendt's entry was "close enough to the line of legality" as to reflect a good-faith effort to comply with the law.[4]

Because the evidence discovered as a result of Officer Wendt's entry in the apartment was inadmissible, we reverse Mr. Evans's convictions.

---

[4] The United States has filed a petition for rehearing or rehearing en banc in *Smith*, contending that the Supreme Court's subsequent decision in *Heien v. North Carolina*, 138 S. Ct. 530 (2014), undermines *Smith*'s holding that the traffic stop at issue in *Smith* violated the Fourth Amendment even if the traffic stop rested on a reasonable mistake of law. The United States did not seek rehearing with respect to *Smith*'s exclusionary-rule analysis. In the present case, the United States has neither relied on *Heien* nor argued that Officer Wendt's entry was lawful under the Fourth Amendment because it rested on a reasonable mistake of law.

**III.**

Mr. Evans argues that the evidence did not permit the trial court to find beyond a reasonable doubt that he possessed the guns and the round of ammunition. Although it is unclear whether the United States could feasibly retry Mr. Evans in light of our suppression ruling, we nevertheless address Mr. Evans's challenge to the sufficiency of the evidence, because a ruling in Mr. Evans's favor on that issue would bar retrial on Double Jeopardy grounds. *See, e.g.*, *Hobbs v. United States*, 18 A.3d 796, 802 (D.C. 2011) (even when reversing on other grounds, "we are obliged to address" sufficiency claims) (brackets and internal quotation marks omitted); *cf. also Kelly v. United States*, 639 A.2d 86, 89 (D.C. 1994) ("It would generally be preferable, for reasons of judicial economy, for the court to address the sufficiency of the evidence before remanding the case for a new trial."). We conclude that the evidence was sufficient to support Mr. Evans's convictions.

In considering a challenge to the sufficiency of the evidence, "we view the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial

evidence." *Medley v. United States*, 104 A.3d 115, 127 n.16 (D.C. 2014) (internal quotation marks omitted). "We evaluate sufficiency based on the evidence that was before the trial court, even if it was admitted erroneously." *Best v. United States*, 66 A.3d 1013, 1019 (D.C. 2013) (citing *Lockhart v, Nelson*, 488 U.S. 33, 40-42 (1988)). "[T]he evidence is sufficient if, after viewing it in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . ." *Smith v. United States*, 55 A.3d 884, 887 (D.C. 2012) (internal quotation marks omitted). This court will not reverse a trial court's factual findings after a bench trial unless those findings are "plainly wrong or without evidence to support [them]." D.C. Code § 17-305 (a) (2012 Repl.). "[A]lthough a [fact-finder] is entitled to draw a vast range of reasonable inferences from evidence, [the fact-finder] may not base a verdict on mere speculation." *Schools v. United States*, 84 A.3d 503, 508 (D.C. 2013) (internal quotation marks and citation omitted). "[A]ppellate review of the sufficiency of the evidence is not toothless," and "[w]e have an obligation to take seriously the requirement that the evidence in a criminal prosecution must be strong enough that a [fact-finder] behaving rationally really could find guilt beyond a reasonable doubt." *Rivas v. United States*, 783 A.2d 125, 136 (D.C. 2001) (en banc).

Although Mr. Evans was charged with and found guilty of attempted possession, the trial court did not rely on the doctrine of attempt in finding Mr. Evans guilty, instead concluding that Mr. Evans constructively possessed the guns and the round of ammunition. *See generally*, *e.g.*, *Evans v. United States*, 779 A.2d 891, 894 (D.C. 2001) ("a person charged with an attempt to commit a crime may be convicted even though the evidence shows a completed offense") (internal quotation marks omitted). In this court, the government also does not rely on the law of attempt, or on other doctrines such as aiding and abetting, instead relying solely on the doctrine of constructive possession to defend the sufficiency of the evidence. We limit our analysis accordingly. *See, e.g., United States v. Truong*, 425 F.3d 1282, 1289 n.2 (10th Cir. 2005) (declining to consider possible alternative basis for sustaining jury verdict, where fact-finder did not consider basis and government did not argue basis on appeal); *cf. Chiarella v. United States*, 445 U.S. 222, 237 (1980) ("[W]e cannot affirm a criminal conviction on the basis of a theory not presented to the jury . . . .").

To establish that Mr. Evans constructively possessed the guns and the round of ammunition, the government had to prove beyond a reasonable doubt that Mr. Evans (1) knew of the presence of those items, (2) had the power to exercise dominion and control over the items, and (3) intended to exercise dominion and

control over the items. *See, e.g.*, *Schools*, 84 A.2d at 507-08. Mr. Evans challenges the sufficiency of the evidence with respect to all three of these requirements.

Before addressing the three requirements at issue, we summarize the key evidence, viewed in the light most favorable to the verdict, and the inferences that in our view could reasonably be drawn from that evidence. (1) Mr. Evans described the apartment as his and told the police he was trying to get Ms. Taylor out of the apartment. (2) By inference, Mr. Evans lived in and had control over the apartment. (3) Mr. Evans and Ms. Taylor had been in the apartment during their altercation a brief time before the police arrived. (4) There was no evidence that anyone else was in the apartment at the time of the altercation. (5) There was no evidence as to when anyone other than Mr. Evans and Ms. Taylor had last been in the apartment. (6) One of the guns was in plain view in a bedroom, inside an open closet that contained men's clothing. (7) The round of ammunition was also in plain view in that bedroom. (8) There was an unmade bed in that bedroom. (9) Although there was a second bedroom in the apartment, it was unclear whether there was a bed in that bedroom, which contained a dog cage. (10) The second gun was inside a closet in that bedroom, near the door and apparently unhidden. (11) There was no evidence that a man other than Mr. Evans lived in the

apartment, had control over the apartment, or had visited the apartment. (12) Ms. Taylor had been in the apartment, Ms. Murray may have been in the apartment on an earlier occasion, and Ms. Brunson had at some unspecified time received mail at the apartment. (13) There was no evidence that the officers saw, or that the photographs showed, any women's clothing in the apartment at the time of the search.

Although Mr. Evans argues that this evidence was insufficient to support a finding beyond a reasonable doubt that he was aware of the guns and the round of ammunition, we conclude that a finder of fact could rationally find knowledge beyond a reasonable doubt. *See, e.g.*, *Stewart v. United States*, 395 A.2d 3, 6 (D.C. 1978) (sufficient evidence that defendant Stewart knew of contraband in home, where defendant Stewart lived in home but was not present at time of search, and substantial quantity of contraband was readily observable throughout home); *cf., e.g.*, *Schools*, 84 A.3d at 503 (in finding sufficient evidence that defendant knew about items of contraband in apartment in which defendant lived, court points out that items "were in plain view, supporting an inference that [appellant] knew of them"); *Smith*, 55 A.3d at 887 (if contraband is found in occupant's home, "a juror may infer that the occupant has . . . knowledge of its presence").

Mr. Evans also contends that he was not in a position to exercise dominion and control over the guns and the round of ammunition, because he was outside the apartment at the moment the police entered the apartment and seized those items. Our cases foreclose that contention. *See, e.g.*, *Moore v. United States*, 927 A.2d 1040, 1050-51 (D.C. 2007) (although defendant was absent from apartment at time contraband was discovered, sufficient evidence that defendant had ability to exercise dominion and control over contraband, where defendant lived in apartment, had key to apartment, and was stopped driving car in immediate vicinity during search of apartment); *cf., e.g.*, *United States v. Kitchen*, 57 F.3d 516, 521 (7th Cir. 1995) (although defendant was incarcerated at time gun was recovered, "the jury might nevertheless have determined he constructively possessed the guns *before* he was incarcerated," when he would have "had the power to exercise control over the [guns]"); *United States v. Horodner*, 993 F.2d 191, 193 (9th Cir. 1993) (defendant had constructive possession of gun left at shop for repair, because he retained right to possess and control gun).

Relatedly, Mr. Evans argues that the evidence failed to establish that the guns were "convenient of access and within reach." Although our cases have not

always been clear on this point, the requirement that a gun be "convenient of access and within reach" is a component of offenses involving "carrying on or about the person," not of offenses involving the broader concept of possession. *See, e.g.*, *White v. United States*, 714 A.2d 115, 119-20 (D.C. 1998) ("'possession' is a broader concept than to 'carry on or about the person'"; to establish carrying, "the government's evidence must go beyond mere proof of constructive possession and must show that the pistol was in such proximity to the person as to be convenient of access and within reach") (internal quotation marks omitted); *Halicki v. United States*, 614 A.2d 499, 503 n.9 (D.C. 1992) (court has occasionally equated concepts of "carrying" and "possession" without discussing whether concepts are in fact same). Because Mr. Evans was convicted of possessory offenses, the evidence need not have established that the guns were convenient of access and within reach.

Finally, Mr. Evans argues that the evidence failed to establish that he intended to exercise dominion and control over the guns and the round of ammunition. We conclude that the evidence was sufficient on this point as well.

Under the language of some of our cases, the evidence of intent to exercise dominion and control in this case seems sufficient. For example, we have said that,

> [w]here knowledge and ability to exercise control over contraband are shown, the additional evidence necessary to prove constructive possession is comparatively minimal. We have recognized that such additional evidence may include evidence showing the accused's control or occupancy of the premises in which the contraband is found. Indeed, a jury is generally entitled to infer that a person exercises constructive possession over items found in his home; that is, by virtue of the contraband being found in an occupant's home, a juror may infer that the occupant has both knowledge of its presence and intent to exercise dominion and control of the contraband. It is usually easy to establish that the owner of a car or the occupant of a living area has constructive possession of illicit items recovered from these places. Although this inference does apply even if a person shares the premises with others, it is plainly not as strong an inference in that circumstance. Therefore, there must be something more in the totality of the circumstances—a word or deed, a relationship or other probative factor—that, considered in conjunction with the evidence of proximity and knowledge, proves beyond a reasonable doubt that the defendant *intended* to exercise dominion or control over the contraband, and was not a mere bystander. Ultimately, whether constructive possession has been proved beyond a reasonable doubt in any given case depends on a fact-specific inquiry into all the circumstances.

*Smith*, 55 A.3d at 887 (brackets, citations, and internal quotation marks omitted); *see also, e.g.*, *Ramirez v. United States*, 49 A.3d 1246, 1249 (D.C. 2012) (Although constructive possession requires more than mere presence of accused or proximity

to contraband, "[i]n general, . . . a jury is entitled to infer that a person exercises constructive possession over items found in his home. Evidence suggesting that a defendant has regular access to the premises, such as possession of a key, may also be sufficient to establish constructive possession. The inference that a person who occupies an apartment has dominion and control over its contents applies even when that person shares the premises with others, although it is plainly not as strong an inference in that circumstance.") (citations and internal quotation marks omitted); *Moore v. United States*, 927 A.2d at 1050 ("[a] wide variety of additional probative evidence may suffice" to establish constructive possession; "Evidence showing the accused's control or occupancy of the premises in which the contraband is found may also serve to prove constructive possession."); *Wells v. United States*, 515 A.2d 1108, 1113 (D.C. 1986) ("Sufficient evidence [to establish constructive possession] has included evidence that the illegal substances were in plain view; or that the accused lived in the room or home where the contraband was found . . . .") (footnotes omitted).

Under this approach, the additional evidence -- beyond the mere fact that Mr. Evans lived in an apartment containing contraband -- would include that there were several items of contraband, the items were in two different rooms, and two

of the items were in plain view. Moreover, given the absence of any evidence that a man other than Mr. Evans occupied or had even visited the apartment, a reasonable factfinder could conclude beyond a reasonable doubt that Mr. Evans lived in the bedroom from which the police recovered one gun and the round of ammunition, and that the men's clothing in the closet in that bedroom belonged to Mr. Evans. *Cf. Reid v. United States*, 466 A.2d 433, 435 (D.C. 1983) (jury's finding of constructive possession supported not only by admission but also "by the fact that the gun was found in a box of men's clothing in the apartment in which [defendant] was the sole male occupant"). This case thus is comparable to cases in which we have found sufficient evidence of constructive possession where contraband was found in close proximity to other personal items linked to an occupant. *See Smith*, 55 A.3d at 887-90 (sufficient evidence that defendant constructively possessed contraband inside child's backpack in master bedroom of apartment defendant occupied; although others also occupied apartment and contraband was not in plain view, backpack was conspicuous and located near items belonging to defendant, and evidence indicated that defendant had been alone in master bedroom for week before police search discovered contraband in backpack); *Stewart*, 395 A.2d at 6 (sufficient evidence that defendant Stewart constructively possessed marijuana in apartment where defendant Stewart lived; although another defendant also lived in apartment and defendant Stewart was not

present at time of search, apartment contained substantial quantity of marijuana, readily observable throughout apartment, and some of marijuana was on dresser in bedroom near items bearing defendant Stewart's name); *Hooker v. United States*, 372 A.2d 996, 996-97 (D.C. 1977) (sufficient evidence that defendant constructively possessed contraband found in bedroom occupied by defendant in home defendant shared with mother; although contraband was not in plain view and others "might have had occasional access to the room," bedroom contained defendant's personal belongings; some contraband was in nightstand; and some contraband was in dresser drawer that contained papers bearing defendant's name and what could be inferred to be defendant's underwear); *see generally Schools*, 84 A.3d at 510 ("We have often found that evidence was sufficient to establish a defendant's constructive possession of contraband where the contraband was recovered in proximity to the defendant's personal items such as mail or personal papers, photographs, and identification cards. Here, however, there was no evidence that any . . . personal effects linked to appellant were found in the back bedroom where the gun and ammunition were found.").

The analysis with respect to the second gun is quite similar to the analysis with respect to the first, given that (1) there is no evidence that anyone other than Mr.

Evans had control over the apartment; (2) there is no evidence that any other male lived in the apartment or had even visited the apartment; (3) there was male clothing in both bedrooms and no evidence of female clothing in either bedroom; and (4) although it is unclear whether the closet door in the second bedroom was open at the time the police entered, neither gun was covered from view.  We also note that the inference of constructive possession as to each gun is to a degree supported by the presence of the other.  *Cf., e.g.*, *United States v. Dykes*, 365 U.S. App. D.C. 381, 385 n.5, 406 F.3d 717, 721 n.5 (2005) ("where a defendant is charged with unlawful [constructive] possession of something, evidence that he possessed the same or similar things at some other time is quite relevant to his knowledge and intent with regard to the crime charged"); *United States v. Taylor*, 728 F.2d 864, 865-66, 870 n.7 (7th Cir. 1984) (inference that defendant constructively possessed machine gun and silencer under couch supported by presence of other contraband elsewhere in apartment, including other firearms); *cf. also Calloway v. District of Columbia Hous. Auth.*, 916 A.2d 888, 890 (D.C. 2006) (in concluding that constructive possession was proven by preponderance of evidence, court notes that contraband was found "at three separate locations in the property leased to [appellant]").

On the other hand, language from some of our cases makes it far less clear whether there was sufficient evidence in this case of Mr. Evans's intent to exercise dominion and control over the guns and the round of ammunition. For example, we have said that, "[i]n cases where the accused is a resident of premises to which others have access, courts will not normally impute possession of an illegal item without proof that the accused is actually involved in some criminal enterprise of which the contraband is a part." *Curry v. United States*, 520 A.2d 255, 264 (D.C. 1987). *See also, e.g.*, *Wheeler v. United States*, 484 A.2d 170, 173 (D.C. 1985) ("Even where the government proves that the defendant is a resident of the place where illegal items are seized, the courts are wary of imputing possession to the defendant absent proof of his involvement in some criminal enterprise."). We have also said that the inference that "a person exercises constructive possession over items found in his own home . . . may be unwarranted where the defendant shares the premises with other people." *Schools*, 84 A.3d at 509. *See also, e.g.*, *In re R.G.*, 917 A.2d 643, 649 (D.C. 2013) ("[W]hen two or more people are occupying a place, a defendant's control over the place is not by itself enough to establish constructive possession of contraband found there.").

More concretely, we have in several cases found the evidence of constructive possession insufficient even though the contraband at issue was found in premises occupied by the defendant. *See, e.g.*, *Schools*, 84 A.3d at 509-12 (although evidence supported finding that defendant actually possessed distribution quantity of drugs found in bedroom of apartment, insufficient evidence that defendant constructively possessed firearm and ammunition hidden in dresser drawer in same room, even though defendant had apparently been sleeping in room at time police entered; others resided in apartment, there was evidence that defendant did not usually occupy room, other personal items in room were not linked to defendant, and expert testimony that guns and drugs are "sometimes" linked added little); *In re R.G.*, 917 A.2d at 649-51 (insufficient evidence that juvenile respondent constructively possessed loaded pistol found behind plastic sheet on windowsill in bedroom respondent shared with adult boyfriend; respondent and boyfriend were in bed at time police entered, there was evidence that other occupants frequented bedroom, respondent denied knowledge or possession of pistol and testified without contradiction that boyfriend had "come in from the street at 3 a.m.," pistol was not "mixed in with [respondent's] belongings," and there was no other ammunition in room); *In re T.M.*, 577 A.2d 1149, 1151-54 (D.C. 1990) (insufficient evidence that juvenile respondents constructively possessed pistol and ammunition found in plain view in bedroom in

apartment; bedroom was occupied by six people at time police entered; apartment was leased by Mr. Jones; although there was evidence that respondents had been staying in apartment for three days and paying rent to Mr. Jones, there was no evidence that they had clothes or personal belongings there; although Mr. Jones had seen similar gun three days earlier, on sofa where one respondent was sleeping, no evidence directly tied respondents to that gun; no evidence tied respondents to drug evidence also recovered from apartment; evidence that occupants all tried to hide when police entered apartment using battering ram was not "sufficient to put the prosecution over the top"); *Curry*, 520 A.2d at 264-65 (insufficient evidence that defendant Curry constructively possessed loaded handgun hidden among women's clothing in drawer of bedroom nightstand; personal papers in defendant Curry's name were on dresser in same bedroom; defendant Curry shared apartment with others and there was evidence that she stayed there intermittently; defendants Jones and Washington were convicted of conducting drug-selling operation from apartment; defendant Curry was not present at time of search and was not shown to have been present in preceding five hours; and five others were present at time of search and could have hidden gun among defendant Curry's belongings); *id.* at 265-66 (same as to defendants Jones and Washington; although they had access to apartment, they did not sleep there; handgun was in bedroom hidden among women's clothing; others had access to

apartment and were present at time of search; and although there was evidence that defendant Jones and Washington were selling drugs from apartment, no evidence tied handgun to drug-selling); *Thompson v. United States*, 293 A.2d 275, 176-77 (D.C. 1972) (per curiam) (insufficient evidence that defendant constructively possessed marijuana in envelope on table in living room of apartment; unclear whether defendant resided in apartment or whether her grandmother and brother instead did; some of defendant's clothing was hanging in bedroom closet; and at time of police entry apartment was occupied by five or six people, with defendant apparently alone in bedroom and others in living room).

The law of constructive possession has been described as a "thicket" and a "chaotic patchwork." *Thompson v. United States*, 546 A.2d 414, 416 (D.C. 1988) (internal quotation marks omitted). Fortunately, we need not traverse the entire thicket to resolve this case. We do venture three general observations, though. First, as we have repeatedly emphasized, "whether constructive possession has been proved beyond a reasonable doubt in any given case depends on a fact-specific inquiry into all of the circumstances." *Smith*, 55 A.3d at 887. It therefore can be very difficult to formulate bright-line rules concerning constructive possession that are applicable in all circumstances. *Cf., e.g.*, *Commonwealth v.*

*Carroll*, 507 A.2d 819, 821 (Pa. 1986) ("Constructive possession by its nature is not amenable to 'bright line' tests.").

Second, as we have also repeatedly emphasized, broad language in our opinions "must be understood in context." *BDO Seidman, LLP v. Morgan, Lewis & Bockius LLP*, 89 A.3d 492, 499 n.6 (D.C. 2014). *See also, e.g.*, *Armour & Co. v. Wantock*, 323 U.S. 126, 132-33 (1944) ("It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the case under discussion. To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court."). It therefore can be perilous to treat statements made in deciding a particular sufficiency issue in a particular case as laying down sweeping rules applicable in all circumstances. For example, although there is language in *Wells* suggesting that constructive possession is sufficiently established as long as there is proof that contraband was in plain view or that the defendant lived in the room or home where the contraband is found, 515 A.2d at 1113, such a bright-line rule would be contrary to the holdings of cases such as *Schools*, *In re R.G.*, *In re T.M.*, *Curry*, and *Thompson*. Conversely, although there is language in cases such as *In re R.G.* suggesting that constructive possession

cannot be established in the absence of "some action, some word, or some conduct that links the individual" to the contraband at issue, 917 A.2d at 649, the holdings of cases such as *Smith*, *Stewart*, and *Hooker* establish otherwise. *See also, e.g.*, *Schools*, 84 A.3d at 510 (constructive possession can be adequately established by proof that contraband was found near defendant's personal items); *Smith*, 55 A.3d at 887 (constructive possession can be established by "a word or a deed, a relationship or *other probative factor*") (emphasis added).

Third, there can be an important distinction between concluding that given evidence would reasonably permit a jury to infer constructive possession and concluding that the same evidence is by itself sufficient to establish constructive possession beyond a reasonable doubt. We made that point at some length in *Rivas*, 783 A.2d at 131-33. *Cf. also County Court v. Allen*, 442 U.S. 140, 166-67 (1979) (explaining distinction between permitting jury to infer conclusion from predicate facts and permitting jury to rely on predicate facts as "sole and sufficient basis for a finding of guilt"). We therefore must be cautious in treating statements about whether it would be reasonable to infer constructive possession as necessarily equivalent to holdings about what evidence is by itself sufficient to establish constructive possession beyond a reasonable doubt.

Turning back to the particular circumstances of this case, we conclude that a reasonable fact-finder could find beyond a reasonable doubt that Mr. Evans intended to exercise dominion and control over the guns and ammunition. As we have already explained, a fact-finder in our view could reasonably conclude beyond a reasonable doubt both that Mr. Evans lived in the bedroom where one gun and a round of ammunition were found in plain view and that the clothes in the closet in that bedroom belonged to Mr. Evans. That being so, this case seems comparable to cases such as *Smith*, *Stewart*, and *Hooker*, in which we upheld findings of constructive possession based on the presence of contraband in plain view in a residence occupied by a defendant, where the contraband was proximate to personal items linked to the defendant. It is true that in *Smith*, *Stewart*, and *Hooker* the personal items at issue bore the defendant's name, but we do not view that difference as critical given the strength of the inference in this case that the clothes in the bedroom closet were Mr. Evans's.

One could reasonably debate whether, when the circumstances of each case are considered as a whole, the evidence of constructive possession in this case, *Smith*, *Stewart*, and *Hooker* is stronger or weaker than the evidence of constructive

possession in *Schools*, *In re R.G.*, *In re T.M.*, *Curry*, and *Thompson*. But none of the latter group of cases involved contraband in plain view in the defendant's bedroom, next to items linked to the defendant. Moreover, several of those cases involved circumstances, not present in this case, that significantly weakened any inference of constructive possession. In *Schools*, the firearm and ammunition were hidden and there was evidence that the defendant did not usually occupy the bedroom at issue. 84 A.3d at 509-12. In *In re R.G.*, the firearm was not in plain view and was not mixed in with the juvenile respondent's belongings, there was a single firearm, and another was person equally close to the firearm at time of the police search. 917 A.2d at 649-51. In *In re T.M.*, there were six people present in the bedroom at issue, and there was no evidence that the juvenile respondents kept personal belongings in the apartment. 577 A.2d at 1151-54. As to defendant Curry in the *Curry* case, the pistol was not in plain view, there was no evidence that Ms. Curry had been in the apartment in the five hours preceding the police search, other occupants of the apartment were present at the time of the search and could have hidden the pistol, and those other occupants were convicted of selling drugs from the apartment. 520 A.2d at 264-65. As to the male defendants in *Curry*, they did not sleep in the apartment, the handgun was in a bedroom hidden among women's clothing, and others had access to the apartment and were present at the time of the search. *Id.* at 265-66. Finally, in *Thompson*, it was unclear

whether the defendant resided in the home, the contraband was inside an envelope in the living room, the defendant was in a bedroom at the time of the police search, and four or five other people were in the living room. 293 A.2d at 176-77.

In sum, we find ourselves unable to say that the trial court in this case acted irrationally by finding beyond a reasonable doubt that Mr. Evans constructively possessed the guns and the round of ammunition recovered from his apartment. Under the applicable standard of review, we therefore conclude that the evidence was sufficient to support the trial court's verdict.

## IV.

For the foregoing reasons, we reverse Mr. Evans's convictions and remand for further proceedings.

*So ordered.*

FERREN, *Senior Judge*, concurring: I join the court's resolution of the Fourth Amendment issue, but write to explain why I believe that the road to finding sufficiency of the evidence, based on constructive possession, is reasonably straight.

We have said that a fact-finder "is generally entitled to infer that a person exercises constructive possession over items found in his home," or, more generally, found in premises he controls or occupies.[1] On the facts here, therefore, the only circumstance that would dilute that inference, as applied to appellant Evans, would be a finding that he "share[d] the premises with others,"[2] suggesting that there was a reasonable possibility that someone other than Evans possessed the shotgun, rifle, and ammunition.

---

[1] *Smith v. United States*, 55 A.3d 884, 887 (D.C. 2012) (citation and internal quotation marks omitted) (*ante* at 29); *see Ramirez v. United States*, 49 A.3d 1246, 1249 (D.C. 2012) (*ante* at 29-30); *Moore v. United States*, 927 A.2d 1040, 1050 (D.C. 2007) (*ante* at 30).

[2] *Smith*, 55 A.3d at 887; *see Ramirez*, 49 A.3d at 1249; *Moore*, 927 A.2d at 1050.

The evidence shows that Evans arguably shared his apartment on occasion with three women: Taylor, Brunson, and Murray. I believe, however, that a reasonable fact-finder could have found—as the trial judge did here—that this evidence was too weak to deflate the inference (sufficient for conviction) that the constructive possessor was Evans, no one else.

First, although the evidence was sufficient for a finding that Taylor had been staying for an undeterminable time with Evans at his apartment, the evidence of Taylor as alternative possessor is substantially weakened by the "plain view" and "linkage" evidence attributable to Evans in the first bedroom where the shotgun and ammunition were found,[3] and by the evidence that the jacket found in the second bedroom, where the rifle was found, belonged to a large man, not a woman.[4]

Second, aside from a pill bottle (Murray) and a summons (Brunson)—neither of which showed a date in the trial record—there was no evidence that

---

[3] *Ante* at 25-26.

[4] *Ante* at 4.

either woman "shared" the premises enough to undermine the inference that Evans constructively possessed the contraband in both bedrooms by virtue of his occupancy and control of the apartment.

As Judge McLeese makes clear, we are not resolving whether, as a matter of law, the evidence "is by itself sufficient to establish constructive possession beyond a reasonable doubt"; rather we are deciding whether the evidence "would reasonably permit a jury [or, as here, the court as fact-finder] to infer constructive possession."[5] I conclude that it would. The fact that the rifle in the second bedroom, unlike the shotgun and ammunition in the first bedroom, was not in "plain view," or "next to items linked to" Evans,[6] is of no consequence to the outcome; the absence of those factors does not, in my view, remove the rifle from Evans's constructive possession, for three reasons. First, a man's, not a woman's, jacket was retrieved from the bedroom where the rifle was found. It may or may not have belonged to Evans, but, as noted earlier, it presumably would not have belonged to Taylor, let alone Murray or Brunson, the only other possessory candidates. Second, the method of storing the rifle in the second bedroom (inside

---

[5] *Ante* at 39.

[6] *Ante* at 41.

the closet door and leaning against either the wall or the door) was identical to that used for storing the shotgun in the first (Evans's) bedroom[7]—a method suggesting, especially in the same apartment, that if the shotgun belonged to Evans the rifle did as well.[8]  Third, the cases on which our dissenting colleague relies all reveal situations in which the premises were unquestionably shared among the defendant and other suspects with virtually equal access to the contraband, far from the situation here.[9]

---

[7] *Cf. United States v. Dykes*, 406 F.3d 717, 722 n.5 (D.C. Cir. 2005) (noting that possession of "same or similar things" at another time relevant to "knowledge and intent" regarding crime charged); *ante* at 33.

[8] *Ante* at 32-33.

[9] *Post* at 50; *see Schools v. United States*, 84 A.3d 503, 510 (D.C. 2013) (reversing conviction based on constructive possession of unregistered firearm and ammunition because, in addition to appellant, "several others" lived in or had access to the premises); *In re R.G.*, 917 A.2d 643, 648-49 (D.C. 2007) (reversing conviction based on constructive possession because appellant's boyfriend was in bed with appellant, and government offered no evidence that boyfriend did not possess unregistered pistol and ammunition); *In re T.M.*, 577 A.2d 1149, 1152 (D.C. 1990) (reversing convictions of both appellants based on constructive possession where several others were in close proximity to unregistered firearm and ammunition), *abrogated by Rivas v. United States*, 783 A.2d 125 (D.C. 2001) (en banc) (eliminating separate rule for constructive possession in vehicles); *Curry v. United States*, 520 A.2d 255, 266 (D.C. 1987) (reversing convictions of all defendants who lived or stayed in apartment or visited there because government did not establish that each had constructive possession of weapon); *Thompson v. United States*, 293 A.2d 275, 276 (D.C. 1972) (per curiam) (reversing conviction for possession of marijuana for failure to prove actual or constructive possession in

(continued…)

Accordingly, I join Judge McLeese's opinion for the court.

BECKWITH, *Associate Judge*, concurring in part and dissenting in part: I join the court's resolution of Jamel Evans's Fourth Amendment claim, and I also agree with my colleagues that the record contains sufficient evidence to support Mr. Evans's conviction for possession of the firearm and ammunition found in the first bedroom. I disagree, however, that the evidence is sufficient to prove that Mr. Evans constructively possessed the gun found in the closet of the second bedroom.

After a comprehensive survey of our case law and a useful breakdown of its competing strands, the court turns to the circumstances of this case and concludes, in light of this case law, "that a reasonable fact-finder could find beyond a reasonable doubt that Mr. Evans intended to exercise dominion and control over the guns and ammunition" based on the evidence that Mr. Evans lived in the first bedroom where the ammunition and one of the guns were found, that clothes in the closet in that bedroom belonged to him, and that that gun and ammunition were

---

(…continued)
room where "four or five other persons were gathered" and "could have brought it there").

found in plain view. *Ante* at 40. These facts, the majority opinion notes, make this case comparable to the decisions "in which we upheld findings of constructive possession based on the presence of contraband in plain view in a residence occupied by a defendant, where the contraband was proximate to personal items linked to the defendant." *Ante* at 40.

Though the court concludes its discussion of our case law by finding sufficient evidence that Mr. Evans constructively possessed the plural "guns," *ante* at 40, and asserts that "[t]he analysis with respect to the second gun is quite similar to the analysis with respect to the first," *ante* at 32, none of the three principal factors the court relies on in deeming the evidence sufficient with respect to the gun in the first bedroom applies to the gun found in a closet in the second bedroom. This gun was not in plain view.[1] It was not proximate to personal items linked to Mr. Evans. And the evidence in the record indicates that the first

---

[1] The majority says it is unclear whether the door to the closet in which the gun was found was open or closed when police entered the apartment, *ante* at 4, 33, but given that the rifle was positioned right by the closet door and that Officer Wendt saw no contraband in plain view when he entered and looked around the second bedroom during his initial room-by-room search of the apartment, *ante* at 3, it is apparent that the gun was not in plain view. The majority's description of the rifle's location as "apparently unhidden," *ante* at 25, even if supported by the record, is not very probative if the officer never saw it during his search of the house.

bedroom, not the room where this gun was found, was Mr. Evans's room.[2]

The majority opinion instead relies heavily on an assertion that "the inference of constructive possession as to each gun is to a degree supported by the presence of the other." *Ante* at 33. In support of this conclusion, the court cites a nonbinding decision concluding that a defendant's possession of "the same or similar things at some other time is quite relevant to his knowledge and intent with regard to the crime charged." *Id.* (quoting *United States v. Dykes*, 406 F.3d 717, 722 n.5 (D.C. Cir. 2005)). In *Dykes*, the court held that the fact that Dykes had been arrested nearby a week before in possession of marijuana was "further evidence" that he possessed marijuana that was found in a bedroom. *Id.* at 722.

As the court reminds us later in the opinion, there is an "important distinction" between "concluding that given evidence would reasonably permit a jury to infer constructive possession and concluding that the same evidence is by

---

[2] While both the court's opinion and Judge Ferren's opinion emphasize the lack of record evidence that others had "control over" the apartment, *ante* at 31-33, *id.* at 44-45 (Ferren, J., concurring), it is worth noting here that the government's evidence that Mr. Evans was the primary occupant of the apartment—an officer's statement that Mr. Evans was trying to expel Ms. Taylor from "his" apartment—was less than robust, and that it was not Mr. Evans's burden to *disprove* possession by presenting evidence about the extent to which Ms. Taylor or others had resided in the apartment.

itself sufficient to establish constructive possession beyond a reasonable doubt." *Ante* at 39 (citing *Rivas v. United States*, 783 A.2d 125, 131-33 (D.C. 2001) (en banc)). Under the facts of this case, whatever the relevance of the gun in the closet of the first bedroom, it does not establish Mr. Evans's constructive possession of the second gun beyond a reasonable doubt.

In nearly every respect, the circumstances pertaining to the second gun align more with the cases the court cites that reverse on sufficiency grounds—namely *Schools v. United States*, 84 A.3d 503 (D.C. 2013), *In re R.G.*, 917 A.2d 643 (D.C. 2007), *In re T.M.*, 577 A.2d 1149 (D.C. 1990), *Curry v. United States*, 520 A.2d 255 (D.C. 1987), and *Thompson v. United States*, 293 A.2d 275 (D.C. 1972) (per curiam). The court distinguishes these cases because "none . . . involved contraband in plain view in the defendant's bedroom, next to items linked to the defendant." *Ante* at 41. But that characterization only describes the gun in the first bedroom. The gun in bedroom two was not in Mr. Evans's bedroom, it was not in plain view, and it was not "recovered in proximity to the defendant's personal items," *Schools*, 84 A.3d at 510.

Other circumstances further weaken any inference that Mr. Evans intended to exercise dominion and control over the rifle in the closet of that room. While

there was evidence that the apartment was Mr. Evans's apartment, the record contains signs that other people were connected to the two-bedroom apartment and that Mr. Evans may not have been its sole occupant. An officer testified that the second bedroom looked "[l]ived in" like the first bedroom. Police found a judicial summons in the apartment addressed to a woman at that address, as well as a prescription in another woman's name—facts, the trial court noted, that "certainly support[] a possible inference that someone else either resided there or had been there perhaps and that's why those items were there." The trial judge also acquitted Mr. Evans of possessing other items in the second bedroom because he was not convinced beyond a reasonable doubt that the jacket in which the marijuana was found or the box in which the ammunition was found were Mr. Evans's.[3] And Shantay Taylor—the woman with whom Mr. Evans was arguing when police responded to a report of domestic violence and whom the prosecutor described as Mr. Evans's girlfriend—had been in the apartment, and Mr. Evans's statement that he was trying to get her out of the apartment supports an inference

---

[3] Defense counsel argued in closing that the trial judge "had the ability for the last two days to observe the defendant sitting to my left. He clearly does not wear an extra-large jacket. . . . So then the question then becomes based on the Government's evidence, whose jacket is this? We don't know who's [sic] jacket it is." Although Judge Ferren describes Ms. Taylor, Ms. Brunson, and Ms. Murray as the "only other possessory candidates," his acknowledgement that the jacket may not have belonged to Mr. Evans suggests at least one other possessory candidate, particularly given Judge Ferren's view that it is unlikely the large men's jacket was Ms. Taylor's. *Ante* at 44-46.

that she had been staying there.[4]

These circumstances are not sufficient under our case law to establish beyond a reasonable doubt that Mr. Evans constructively possessed the gun in the second bedroom. So the court relies upon Mr. Evans's constructive possession of the gun in the first bedroom to sustain a conclusion beyond a reasonable doubt that he intended to exercise dominion and control over the second gun. Yet absent some telling link between the rifle in the second bedroom and the gun or ammunition in the first bedroom—such as a match between the ammunition and the rifle, which the evidence does not show—this court's conclusion that a factfinder could reasonably find Mr. Evans guilty of possessing the gun in the first bedroom is not sufficient to surmount all the circumstances that cut the other way as to the second gun.[5]

---

[4] The prosecutor drew the same inference, stating, in response to defense counsel's motion for judgment of acquittal, that "Your Honor can conclude that the apartment does, in fact, belong to the defendant, that Ms. Taylor had been staying at that apartment with him, [and] that he had kicked her out of the apartment, which was the source of the argument[.]"

[5] The trial court itself found its verdict on this count to be "a closer call," in part because the government's photograph of the closet in the second bedroom did not depict the items in that closet as clearly as its photograph of the closet in the first bedroom.

Under our case law, the determination in this case that Mr. Evans constructively possessed the gun in the second bedroom, while "plausible, . . . cannot bear the weight of proof beyond a reasonable doubt." *James v. United States*, 39 A.3d 1262, 1270 (D.C. 2012) (quoting *Commonwealth v. Rodriguez*, 925 N.E.2d 21, 26 (Mass. 2010)). I respectfully dissent from that portion of the court's opinion.